**SPAN–ENG ASSOCIATES, et al.,**
**Plaintiffs-Appellants,**

v.

**Stephen M. WEIDNER, et al.,**
**Defendants-Appellees.**

**No. 84–1185.**

United States Court of Appeals,
Tenth Circuit.

Aug. 28, 1985.

Neil Wake, Phoenix, Ariz. (Leo R. Beus, Joseph A. Schenk, Merwin D. Grant and Stephen C. Rich, Phoenix, Ariz., on brief), of Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., for plaintiffs-appellants.

Chris Wangsgard, Salt Lake City, Utah (Norman S. Johnson and Eric C. Olson, Salt Lake City, Utah, with him, on brief); James S. Lowrie and Janet C. Graham of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, with him, on brief, for defendant-appellee First Interstate Bank of Utah; Harold G. Christensen, R. Brent Stephens, Robert H. Henderson and Shawn E. Draney of Snow, Christensen & Martineau, Salt Lake City, Utah, with him on brief, for defendant-appellee Andrew P. Brucker; Elwood Powell and Denton Hatch of Christensen, Jensen & Powell, Salt Lake City, Utah, with him on brief, for defendant-appellee Schekter, Aber & Hecht; and Richard W. Giauque, Gary F. Bendinger and Scott A. Call of Giaque & Williams, Salt Lake City, Utah, and Anthony J. Constantini, Asst. Gen. Counsel, New York City, Peat, Marwick, Mitchell & Co., on brief, for defendant-appellee Peat, Marwick, Mitchell & Co., of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendants-appellees Musick, Peeler & Garrett and Roger B. Baymiller.

Before HOLLOWAY, Chief Judge, and SETH, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This is an appeal from a grant of a preliminary injunction by the United States District Court for the District of Utah. Appellants are plaintiffs in a securities fraud action brought in Utah district court against a number of defendants. At the request of several of these defendants, the Utah court enjoined plaintiffs and their attorneys from proceeding in another related

securities fraud action they had subsequently filed in the United States District Court for the District of Arizona. We reverse.

## I.

In October 1981, plaintiffs Span-Eng Associates ("Span-Eng"), a Utah limited partnership and forty seven of its limited partners filed suit in Utah district court against various individuals and professional entities involved in the offering of the Span-Eng partnership interests ("the Utah defendants"). These defendants include Musick, Peeler & Garrett, a California law firm, and member attorney Roger Baymiller; Schekter, Aber and Hecht, a New York law firm, and former member attorney Andrew Bricker; Peat, Marwick, Mitchell & Company, a national accounting firm, and member accountant David Winder; Steven Weidner, the organizer and promoter of Span-Eng, and Alta Communications, Inc. ("Alta"), a corporation which was owned by Weidner and was the general partner in Span-Eng.[1] Plaintiffs' original complaint alleged numerous violations of Section 10(b) of the Securities Exchange Act of 1934 and sections 12(2) and 17 of the Securities Act of 1933. The complaint also alleged violations of the Utah Uniform Securities Act, breach of fiduciary duty, conspiracy, and common law fraud.

In March 1982, plaintiffs filed an amended complaint dropping among others the claims of conspiracy and violation of section 17 of the Securities Act. In June, three days before a hearing on defendants' motion to dismiss this first amended complaint, plaintiffs filed a second amended complaint which repeated the allegations in their first amended complaint but added First Interstate Bank of Utah as a new defendant. The district court subsequently dismissed certain counts of the first amended complaint, and several days later plaintiffs filed a third amended complaint.

From June to December 1982 the parties filed a series of counterclaims, crossclaims, and third party claims. During this period they also participated in a scheduling conference at which they adopted an initial deposition schedule, established a discovery cut-off date, set tentative dates for pretrial conferences and trial, and engaged in some discovery. In addition, the Utah district court approved and entered as an order a stipulation executed by plaintiffs and defendants. This stipulation included specific negotiated language for certain jury instructions governing key aspects of plaintiffs' damage claims.[2]

The Utah court also issued various orders limiting and defining the scope of discovery in an attempt to focus the litigation. The most significant of these orders prohibited plaintiffs from pursuing discovery into matters related to certain investment offerings in coal mining ventures involving defendant Weidner. The court directed that while plaintiffs were free to pursue this discovery in another pending action,[3] they were to confine discovery in the Utah action to the facts of the Span-Eng offering.

In February 1983, plaintiffs moved for leave to file a fourth amended complaint and sought to add six additional defendants.[4] They also sought to reintroduce

---

**1.** The complaint also named another law firm and two other individuals whom plaintiffs subsequently dropped from the Utah action and who have no further involvement in any aspect of the case.

**2.** The stipulation was achieved after defendants released third party claims they had against Weidner Communications, Inc. (WCI), a corporation wholly owned by plaintiffs. Plaintiffs had acquired all of the stock in WCI from defendant Weidner in 1980, prior to the filing of the Utah action.

**3.** These offerings are the subject of an action, styled *Semegen, et al. v. Hammond, et al.,* No. Civ. 21–1531, filed in United States District Court in Arizona in December 1981. Some of the Utah plaintiffs are also plaintiffs in the *Semegen* action.

**4.** The six additional defendants are (1) Martin Hecht, an attorney formerly with defendant Sheckter, Aber & Hecht; (2) Burke Willsey, an attorney formerly with defendant Musick, Peeler & Garrett; (3) Vibert Kesler, an attorney; (4) Senior & Senior, a Utah law firm where Mr. Kesler worked at the time of the Span-Eng of-

conspiracy claims against all defendants and to reinstate claims based on section 17 of the Securities Act, both of which claims plaintiffs had dropped when they first amended their original complaint. In May, the Utah court rejected the proposed fourth amended complaint on the grounds that the motion was untimely and failed to set forth with particularity the basis for the amendment as required by Fed.R.Civ.P. 7(b) and 15. After twice permitting plaintiffs time to provide sufficient facts to support the amendment, the court again denied the motion. The court found that: (1) the motion was untimely; (2) plaintiffs had failed to exercise due diligence in bringing the motion and in discovering new facts to support it; (3) plaintiffs had failed to make a sufficient factual showing in support of the justness of allowing the motion, as required by Rule 15; and (4) plaintiffs' reasons for adding additional parties were insufficient.

In November 1983, plaintiffs filed an action in Arizona district court against the same six defendants the Utah court had refused to join. Except for minor adjustments, the Arizona complaint is a verbatim recitation of the counts and relief sought in the proposed fourth amended complaint rejected by the Utah court, including the claims of conspiracy and violation of section 17 of the Securities Act. The Arizona complaint reiterates all of the factual allegations against defendants in the Utah action, although none of the Utah defendants are named as defendants in the Arizona action. The complaint also reiterates allegations regarding the coal mining ventures that the Utah court had ruled were beyond the scope of discovery in the Utah action.

Two Utah defendants sought to enjoin plaintiffs and their counsel from proceeding in the Arizona action during the pendency of the action in Utah. The Utah court issued an order enjoining Utah plaintiffs and their counsel "from further prosecuting the action styled *Span-Eng Associates et al.* Civil No. 83-2204 PHX VAC ('the Arizona action'), prior to the entry of final judgment in this action disposing of all legal and factual matters at issue between the parties to this action." Rec., vol. XIV, at 3502–03.

The court based its decision to enjoin plaintiffs on (1) the possibility of inconsistent results in the Utah and Arizona actions; (2) duplication of judicial effort; (3) the probability that plaintiffs were engaged in forum shopping or judge shopping; and (4) plaintiffs' ability to obtain complete relief in the Utah action. On appeal, plaintiffs argue that the Utah district court lacked the power to issue the injunction and even if the court had the power to do so, issuance in this case was an abuse of discretion.

II.

The order enjoining plaintiffs from proceeding in Arizona involved an exercise of judicial discretion. *See Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Commodity Futures Trading Commission v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir.1983). The exercise of such discretion calls for a balancing of competing interests. *Id.*

This case involves the somewhat unusual situation in which a party to one lawsuit seeks to enjoin another party from proceeding in a related case where identical issues and parties are not present.[5] In

---

fering; (5) Kesler & Rust, a Utah law firm where Mr. Kesler was then working; and (6) Melvin Stanford, a former business associate of defendant Weidner.

5. In the more typical case, one party seeks to enjoin another from proceeding in an identical, later-filed action involving the same parties in another forum. *See, e.g., O'Hare International Bank v. Lambert,* 459 F.2d 328 (10th Cir.1972);

*Cessna Aircraft Company v. Brown,* 348 F.2d 689 (10th Cir.1965); *Chicago Pneumatic Tool Co. v. Hughes Tool Co.,* 180 F.2d 97 (10th Cir.1950). While those cases also involve an exercise of judicial discretion, they do not implicate the concerns present when a party's right to proceed against third parties is curtailed. Those cases do not therefore provide a standard governing the exercise of judicial discretion in a case such as this.

*Chilcott*, this court was faced with a similar challenge to an order enjoining parties from proceeding in related but different lawsuits.[6] There we noted that "where a movant seeks relief that would delay court proceedings by other litigants he must make a *strong showing of necessity* because the relief would severely affect the rights of others." *Id.* (emphasis added). We further observed that even when the relief sought is only a stay of the case in which the motion is made:

"[T]he supplicant for a stay must make out a *clear case of hardship or inequity* in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in *rare* circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."

*Id.* (quoting *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)) (emphasis added).

We emphasized in *Chilcott* that "[t]he right to proceed in court should not be denied except under the most extreme circumstances," *id.* (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir.1971)), and that "these precautions are of particular importance where, as here, restraints on other courts are contemplated," *id.* "When an injunction sought in one federal proceeding would interfere with another federal proceeding, ... such injunctions should be granted *only in the most unusual cases.*" *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976) (emphasis added).

Under *Chilcott*, the Utah defendants were required to make a "strong showing" that the injunction was necessary and that "the disadvantageous effect on others would be clearly outweighed." 713 F.2d at 1484. Our review of the record indicates that the Utah defendants have not made

the requisite showing that this case presents the extreme or unusual circumstances necessary to support the district court's order. Assuming *arguendo* that such an injunction is within a court's equity powers, *see Chilcott*, 713 F.2d at 1484–85, defendants failed to make the clear case required for it.

### Inconsistent Results

The district court first noted "[t]he Utah action involves the same limited partnership offering, the same alleged misrepresentations and omissions, the same principal actors and the same events." Rec., vol. XIV, at 3510. The court then concluded "[b]ecause the claims asserted are the same with only minor variations, the risk of inconsistent results is manifestly present." *Id.* at 3510–11. As plaintiffs point out, however, every defendant in the two cases played a different role in the Span-Eng offering. There is nothing impermissibly inconsistent between a finding in Utah that a Utah defendant was guilty of securities fraud and an Arizona finding that an Arizona defendant was not guilty of the same charge. In any lawsuit with different defendants, inconsistency in the ultimate determinations of individual liability is entirely possible and not improper.

Defendants argue that certain issues such as reliance, causation, and damages under federal securities laws, will be the same in both actions for all plaintiffs. They assert that allowing the Arizona and Utah actions to proceed independently increases the risk of different findings on issues otherwise open to collateral estoppel. While this is true, the opportunity for collateral estoppel works to defendants' benefit. Findings against particular plaintiffs on issues in one action should, under the doctrine of collateral estoppel, bind the same plaintiffs in the other action. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. Uni-*

---

**6.** While the facts in *Chilcott* were different from those in this case, the standard for issuing an injunction set forth in *Chilcott* certainly applies

to this case. We therefore reject defendants' argument that the *Chilcott* decision is inapplicable.

*versity of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The risk of inconsistent results detrimental to defendants will therefore be minimal. Inconsistent results that operate to plaintiffs' detriment are properly a matter of concern to plaintiffs, not defendants.

### Judicial Economy and Efficiency

The court also found that the Arizona action was a "waste of time and energy," rec., vol. XIV, at 3511, and that it "would result in [a] needless waste of judicial energy and resources," *id.* at 3510. Defendants claim that allowing the Arizona action to proceed will result in expensive, burdensome, and duplicative discovery. We are not persuaded.

■ First, as we noted in *Chilcott,* "considerations [of judicial economy] should rarely if ever lead to such broad curtailment of the access to the courts." 713 F.2d at 1485. This is particularly true here, where the record contains no specific findings regarding the extent of any duplication of effort or resulting burden on defendants. When defendants sought to enjoin the Arizona proceedings, only six depositions totaling twenty six days had been taken in a lawsuit involving forty seven plaintiffs and seven defendants.

We also are not persuaded by defendants' argument that allowing the Arizona action to proceed will permit inconsistent treatment of discovery concerning the coal mining ventures. First, nothing in the record indicates that such discovery cannot already be conducted against defendants in the *Semegen* action, *see* note 3 *supra,* to the extent that the Utah defendants are discoverable witnesses in that action. Furthermore, the Utah court's order prohibiting such discovery is limited only to the Utah action. If the coal mining ventures are relevant to claims against the Arizona

defendants, then permitting this discovery in Arizona is not impermissibly inconsistent. If defendants, as discoverable witnesses in Arizona, are subjected to inconsistent or burdensome discovery requests, they may seek relief from the Arizona court.

Finally, if the two actions pose the problem of overlapping and duplicative discovery, referral to the Multidistrict Panel is a viable alternative for the district court.[7] *See* 28 U.S.C. § 1407 (1982). The record does not indicate that the district court considered this as a means of coordinating and simplifying pretrial and discovery activities.

### Forum Shopping

The district court also found that plaintiffs' filing of the Arizona action was "an attempt to avoid or undermine the orders of this court . . . to avoid the consequences of the court's rulings. . . ." Rec., vol. XIV, at 3511. The court reasoned that the policy considerations of judicial economy and avoidance of inconsistent results

> "apply with even more force where the parties enjoined are plaintiffs in both actions and the parties sued in the second action have already been before this court and the plaintiffs have been denied the opportunity to join them due to the equitable considerations implicit in the proper application of Rule 15. If plaintiffs believe that Rule 15 has been improperly applied in this case to deny them the right to amend their complaint, they have their protection through direct appeal. To allow plaintiffs to bypass that direct avenue of review by filing the rejected complaint in another federal district court is manifestly against public policy."

*Id.* at 3512–13. Plaintiffs argue to the contrary that filing of the Arizona action was a permissible attempt to protect them-

---

**7.** We reject defendants' claim that the use of the multidistrict mechanism was infeasible due to the advanced stage of discovery in the Utah action. At the time defendants sought the injunction, very little discovery had actually occurred. In their brief on appeal, defendants refer to sixty eight days of depositions, but forty two of these days occurred after the court issued the injunction. Discovery that has occurred since the injunction issued cannot be used to justify the order.

selves against expiration of the statute of limitations on claims against the Arizona defendants they were unable to join in the Utah action.

We agree that the district court could take into account circumvention of the rules of procedure or court rulings in assessing the propriety of an injunction. *Cf. Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1164–65 (10th Cir.), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982). A court's rulings must be capable of enforcement in order to preserve judicial authority and to preserve control of its docket. Moreover, a court may employ its injunctive power "to prevent a misuse of litigation in the nature of vexatious and oppressive foreign suits." *O'Hare International Bank v. Lambert,* 459 F.2d 328, 331 (10th Cir.1972); *see also Hospah,* 673 F.2d at 1163. We do not agree, however, with the court's conclusion that plaintiffs' filing of the Arizona complaint was an impermissible avoidance of its ruling which warranted an injunction. In the context of this case, filing to protect against the statute of limitations was not vexatious and oppressive. *See O'Hare,* 459 F.2d at 331.

In addition, because the Arizona action involves entirely different defendants, the policy concerns raised by forum shopping are absent in this case. A plaintiff is generally free to file a lawsuit in the forum of its choosing so long as the suit meets jurisdictional and venue requirements. The reasons underlying the Utah court's denial of plaintiffs' motion to amend were relevant and proper with respect to the Utah action. None of these reasons, however, operate as a bar to plaintiffs' initially bringing their action against the six new defendants in Arizona. Had plaintiffs filed their Arizona action without first moving to amend their Utah complaint, the Utah defendants certainly could not have opposed the Arizona action on the grounds they asserted in opposing plaintiffs' motion to amend their complaint in Utah. We fail to see why the result should be any different when plaintiffs, having pursued and lost their motion to amend, subsequently file a lawsuit they are unquestionably entitled to bring. Plaintiffs' actions were not manifestly against public policy and the district court erred in so construing them.

### Ability to Obtain Complete Relief

The court also reasoned that plaintiffs could obtain complete relief in the Utah action. Defendants argue that "[w]ith numerous solvent defendants ... the Utah action fills every current need the Plaintiffs may have to air their claims arising from their Span-Eng investment." Brief of Appellees at 24. We disagree. Any conclusion that plaintiffs can obtain complete relief in the Utah action is speculative at best. The fact that plaintiffs have chosen to seek relief in Arizona belies any suggestion that they are satisfied that complete relief in Utah is a certainty. The Utah action provides plaintiffs with no opportunity to obtain relief from the Arizona defendants. A defendant's mere assertion of such a claim cannot control a plaintiff's exercise of the right to pursue a cause of action against other defendants. It is not for a defendant to decide the legal needs of an opposing plaintiff.

This case does not present the extreme circumstances that would justify this exercise of a court's equitable power. Defendants have failed to make a strong showing of need or undue burden that outweighs the disadvantageous effect on plaintiffs in the Arizona action. *See Chilcott,* 713 F.2d at 1484. Accordingly, the district court abused its discretion in issuing the injunction. The order enjoining plaintiffs from proceeding in Arizona is reversed.