**UNITED STATES of America, Plaintiff–Appellant,**

v.

**STATE OF COLORADO; Roy Romer, Governor of the State of Colorado; Colorado Department of Institutions; Frank A. Taylor, M.D., Executive Director, Colorado Department of Institutions; Jeffrey A. Sandler, Director, Colorado Department of Institutions, Division for Developmental Disabilities; Raymond Del Turco, Superintendent Wheat Ridge Regional Center, Defendants–Appellees.**

No. 90–1307.

United States Court of Appeals, Tenth Circuit.

June 25, 1991.

Michael J. Norton, U.S. Atty., John R. Dunne, Asst. Atty. Gen., Dennis J. Dimsey and Miriam R. Eisenstein, Dept. of Justice, on the briefs, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Larry A. Williams, First Asst. Atty. Gen., and Carolyn Lievers, Asst. Atty. Gen., on the briefs, for defendants-appellees.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The United States appeals from the district court's denial of its motion to modify a consent decree entered into by the United States and the State of Colorado. The government argues that the district court improperly modified the agreement reached by the parties when entering the decree. We agree and reverse.

This case originated on July 10, 1986, when the United States filed suit against Colorado under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997–1997j, alleging the conditions at Wheat Ridge Regional Center (Center), an institution for the developmentally disabled, violated the constitutional rights of the residents. On July 22, 1986, the parties reached a settlement of the action which they submitted to the district court. The

court approved the settlement and entered a consent decree to correct conditions at the Center. This decree gave Colorado until July 1, 1988, to comply with its terms.

On January 26, 1990, the government filed a motion for an order to show cause why Colorado should not be held in contempt for failing to comply with the 1986 decree. Hearings were held on the motion, and the parties ultimately entered into a second agreement on July 26, 1990. Once again, the agreement was submitted for the court's approval. The district court approved the agreement on August 13, 1990, dismissed the government's contempt action, and entered several other orders implementing the agreement.

The government then moved the court to modify the decree, claiming one of the implementing orders substantially changed an essential term of the settlement agreement. Specifically, it argued that the implementing order shifted a burden of proof to the government when the parties had already agreed the state should bear that burden. The district court denied the government's motion for modification, stating that its August 13, 1990 order "effectuates terms contained in the stipulation by the parties." The government now appeals from this denial.

The parties stipulated to the following provision concerning the dismissal of the decree:

5. (A) The parties contemplate that Defendants shall have fully and faithfully implemented all provisions of this Stipulation and of the Consent Decree by July 1, 1991.

(B) The Court shall retain jurisdiction of this action for all purposes under this Stipulation and Consent Decree until Defendants have fully and faithfully implemented all provisions of this Stipulation and the Consent Decree....

.       .       .       .       .

(D) Dismissal shall be granted unless, within sixty (60) days after the receipt of Defendant's motion [to dissolve the decree upon certifying full implementation], the United States objects to such motion. If an objection is made with

particularity, the Court shall hold a hearing on the motion and the burden shall be on Defendants to demonstrate that they have fully and faithfully implemented all provisions of this Stipulation and the Consent Decree, and any approved plans or parts thereof.

R. at 94. The district court's implementary order of August 13, 1990, added, among other things, the following provision: "The Court's jurisdiction in this matter shall conclude on July 1, 1991 unless good cause is shown that the necessity exists for a modest extension thereof."

I.

A.

Because the order appealed from is interlocutory, we must first consider whether we have jurisdiction. As a general rule, our appellate authority extends only to final orders. 28 U.S.C. § 1291. One exception to this rule grants appellate jurisdiction over interlocutory decisions of district courts "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). In *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), the Supreme Court allowed an appeal under § 1292(a)(1) from an order refusing to approve a consent decree. The *Carson* court noted that while the case did not involve an appeal of an action labelled an injunction, the denial of the consent decree had the same "practical effect." *Id.* at 84, 85, 101 S.Ct. at 996, 997.

*Carson* also held that for the interlocutory consent decree to be appealable under § 1292(a)(1), the appellant must show not only that the action had the same practical effect as the denial of an injunction, but also that the order might have irreparable consequences and can only be "effectively challenged" by immediate appeal. *Id.* at 85, 101 S.Ct. at 997. Therefore, to sustain our jurisdiction here, the government must satisfy *Carson*'s tripartite test: 1) the interlocutory order must have the practical effect of denying an

injunction; 2) the order must have irreparable consequences; and 3) the order must be one that can be effectively challenged only by immediate appeal. *See also Sierra Club, Inc. v. Electronic Controls Design, Inc.,* 909 F.2d 1350, 1353 (9th Cir.1990).

### B.

It is undisputed that the parties negotiated a new settlement agreement that was essentially injunctive in nature. Like the circumstances in *Carson,* "prospective relief was at the very core" of the parties' agreement. 450 U.S. at 84, 101 S.Ct. at 996. The new settlement agreement in this case contained many conditions which Colorado must fulfill. Thus, this consent decree entered to effectuate the settlement must be regarded as the functional equivalent of an injunction. The government contends the order approving the agreement has the effect of changing the agreed burden of proof. Although the order is ambiguous, for the purposes of our jurisdictional inquiry, we shall presume that is its effect.

The state, however, argues the district court did not enter injunctive relief merely by changing the burden of proof. Thus, the state contends, the actual order appealed from has no injunctive attributes. We do not agree.

As the Ninth Circuit noted in *Sierra Club,* 909 F.2d at 1353, "[b]ecause the court refused to enter the entire consent judgment, its denial had the practical effect of denying an out-of-court settlement containing injunctive relief." In the present case, while the district court approved the settlement, the modification of the agreed upon procedure for its enforcement directly affected the injunctive remedy. By placing upon the government the burden of proving the state's failure to comply with the terms of the agreement, the court refused to effectuate the injunctive remedy stipulated by the parties and substituted another in its stead.

■ This court need not, however, resolve at this point the issue of whether the modification made by the district court was itself injunctive in nature because our § 1292(a)(1) jurisdiction is not dependent upon the particular provision at issue in the appeal. Indeed, the precise issue on appeal need not be an injunctive order if the decree within which the order is effected is essentially injunctive. In *Donovan v. Robbins,* 752 F.2d 1170, 1176 (7th Cir.1985), the court held that even though the "stumbling block" to approval of the decree at issue was not an injunctive provision, it did affect enforcement of the injunctive provisions in the decree, and this is sufficient to satisfy the *Carson* requirement that the action have the practical effect of denying an injunction. Therefore, we believe the first requirement of *Carson* is satisfied.

### C.

Next, the government must show irreparable harm and the probable loss of the opportunity to challenge effectively the order. *Carson* held that these two requirements are satisfied if the appellants "might lose their opportunity to settle their case on the negotiated terms" or if they are denied "their right to compromise their dispute on mutually agreeable terms." 450 U.S. at 86, 88, 101 S.Ct. at 998, 998. The Court in *Carson,* quoting from *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), in support of the importance of maintaining the integrity of the settlement agreed upon by the parties, stated:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation.

450 U.S. at 86–87, 101 S.Ct. at 998. In the present case, the district court's order significantly affects future actions between the parties. By shifting the burden of proof, the court has irreparably harmed the

government by placing it into a weaker future negotiating position. The negotiating position established by the agreement prior to its modification was the product of a negotiation itself. If the government was amenable to the position into which the district court thrust it, the government would have agreed to accepting the burden of proof as part of the settlement. Likewise, if the government was unwilling to assume the burden of proof, no settlement would have been achieved without the state's acceptance of the burden. We believe it evident from these circumstances the government abandoned the contempt proceeding in part, at least, upon the agreement that it would not have the burden of showing compliance on July 1, 1991.[1]

The government has satisfied the second and third requirements of *Carson* because it has lost its right to settle the case on the terms negotiated by the parties. *See Durrett v. Housing Auth. of the City of Providence*, 896 F.2d 600, 602 (1st Cir.1990). Therefore, we conclude we have jurisdiction to hear this appeal under § 1292(a)(1).

## II.

■ The provisions concerning the procedures and timing of the dismissal of the decree were unambiguously articulated in the Stipulation. The parties negotiated these terms, arriving at a mutually acceptable resolution on how and when to dismiss the consent decree. There is no question that the district court in the present case altered an important provision of the agreement. It effectively discarded the balance struck by the parties concerning the duration and procedures for dismissing the consent decree and substituted its own procedures and time frame. The question, then, is whether the district court has the authority to make such a change unilaterally and without notice to the parties.

■ While the court may either approve or deny the issuance of a consent decree, generally it is not entitled to change the terms of the agreement stipulated to by the parties. *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.1985); *Artvale, Inc. v. Rugby Fabrics Corp.*, 303 F.2d 283, 284 (2d Cir.1962). As the court noted in *Plummer v. Chemical Bank*, 668 F.2d 654, 655 n. 1 (2d Cir.1982), "[t]he district court judge should not take it upon himself to modify the terms of the proposed settlement decree, nor should he participate in any bargaining for better terms." Citing *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125 n. 24 (7th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). If the court discerns a problem with a stipulated agreement, it should advise the parties of its concern and allow them an opportunity to revise the agreement. *United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir.1981) (en banc). Ultimately, the district court is faced with the option of either approving or denying the decree; "the settlement must stand or fall as a whole." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir.1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983).

■ The district court, however, is not obliged to approve every proposed consent decree placed before it. Because the issuance of a consent decree places the power of the court behind the compromise struck by the parties, the district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest. The court also has the duty to decide whether the decree is fair, adequate, and reasonable before it is approved. *City of Miami*, 664 F.2d at 440–41.

■ There are some circumstances beyond the purview of this case under which

1. Compare *Equal Employment Opportunity Comm'n v. Pan American World Airways, Inc.*, 796 F.2d 314, 317 (9th Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987), where the court held that the district court's disapproval of the consent decree "in no way inhibits further negotiations between the EEOC and Pan Am to meet the concerns raised.

As a result, Pan Am is not being denied the right to settle the case on any mutually agreeable terms, as were the defendants in *Carson*." In the present case, because the district court approved the settlement, but then changed a material term of the agreement, the parties are being denied their right to settle their case on the terms they have negotiated.

**510**

a district court may itself modify the terms of a consent decree. Before the court may modify a consent decree under any circumstance, however, it must notify the parties of its intent and afford them an opportunity to present relevant evidence and argument on the need to modify. *United States v. Atlantic Ref. Co.*, 360 U.S. 19, 23, 79 S.Ct. 944, 946, 3 L.Ed.2d 1054 (1959); *United States v. Western Elec. Co.*, 894 F.2d 430, 435, 437 n. 12 (D.C.Cir.1990).

■ Moreover, modifications of a consent decree should only be made to further the original goals of the agreement. Here, the court failed to identify, nor can we find, a defect or deficiency that would impede the achievement of the decree's goals. *Heath v. DeCourcy*, 888 F.2d 1105, 1110 (6th Cir.1989). In addition, the district court did not give notice of its intentions or hold a hearing on the proposed modification.

Therefore, we hold that the district court abused its authority by modifying the terms of the agreement. The district court should have either approved or denied the consent decree as a whole when presented with the terms by the parties. The district court's Order of August 13, 1990, is VACATED, and this case is REMANDED for the district court to consider whether to approve or disapprove of the stipulation as agreed upon by the parties.