**MAI BASIC FOUR, INC., a Delaware corporation, Plaintiff–Appellant,**

v.

**BASIS, INC., a New Mexico corporation; Thomas A. Olson; Scott Amspoker; and Russell B. Kepler, Defendants–Appellees.**

No. 90–2077.

United States Court of Appeals, Tenth Circuit.

April 24, 1992.

Boyd N. Boland, Holme Roberts & Owen, Denver, Colo. (John R. Webb, Holme Roberts & Owen, Denver, Colo., and Lorna M. Wiggins, Sutin, Thayer & Browne, Albuquerque, N.M., with him, on the brief), for plaintiff-appellant.

Gregory D. Huffaker, Jr., The Poole Law Firm, Albuquerque, N.M. (Robert W. Harris and Anthony L. Romo, The Poole Law Firm, Albuquerque, N.M., with him, on the brief), for defendants-appellees.

Before HOLLOWAY, ALDISERT *, and EBEL, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff-appellant MAI Basic Four, Inc. ("MAI") brought this diversity suit in the district court against defendant-appellee Basis, Inc. and defendants-appellees Olson, Amspoker and Kepler (collectively "Basis"). This appeal is from a preliminary injunction for the defendants granted in that suit.

## I

MAI, a computer hardware and software manufacturer, alleged that defendants, through their software company, Basis, Inc., are unlawfully producing software products called BB$^x$ and Comm 72 which are "clones" of one produced by MAI called BB/M. The individual defendants are all

---

* The Honorable Ruggero J. Aldisert, Senior Circuit Judge of the Third Circuit, sitting by designation.

former employees of MAI who were terminated when MAI discontinued operations in Albuquerque, New Mexico. The defendants subsequently formed Basis, Inc. Plaintiff MAI brought this action against defendants, individually, and against the Basis corporation.

MAI's complaint averred that the defendants committed breaches of employment related agreements with MAI[1]; breach of the duty of loyalty; theft of MAI trade secrets; unfair competition; interference with contractual relations; and civil conspiracy. In its Answer, Basis denied the allegations and averred several counterclaims.

Prior to trial, Basis moved for a preliminary injunction restraining MAI "from threatening, filing or prosecuting vexatious and oppressive suits against third-party resellers of software products of Basis, pending the final hearing and determination of this action." I R.Doc. 213 at 1.[2] After a hearing and extensive findings of fact, the district court issued a preliminary injunction barring MAI during the pendency of the diversity proceedings from "threatening, filing, or prosecuting lawsuits in any federal court against third party resellers of Basis software products based upon any claims that their marketing of Basis software violates any alleged rights of MAI." I R.Doc. 292 at 14.[3] MAI brought the instant appeal from the preliminary injunction.

Following oral argument Basis moved to dismiss this appeal, relying on the recent decision in *Hershey Foods Corp. v. Hershey Creamery Co.*, 945 F.2d 1272 (3d Cir. 1991). Under *Hershey*, Basis argues that this is not a proper appeal of an interlocutory decision granting an injunction as authorized by 28 U.S.C. § 1292(a)(1).

This opinion will address first the motion to dismiss, which we deny, and will then treat the merits of the appeal. The contentions of MAI to be considered are principally that: (1) this appeal does come within the provisions of 28 U.S.C. § 1292(a)(1) for appeal of interlocutory decisions granting injunctions; (2) the district court erred in issuing its broad injunction prohibiting MAI from filing and prosecuting actions in any federal court against third parties and asserting new claims; (3) the district court applied the wrong legal standard in issuing such a broad injunctive order in the absence of extreme circumstances and a strong showing that the disadvantages of the injunction were clearly outweighed by its necessity; (4) the district court's conclusion that MAI engaged in a pattern of vexatious and oppressive conduct is clearly erroneous; and (5) the district judge erred in admitting evidence of statements made during settlement negotiations, in violation of Fed.R.Evid. 408.

## II

■ We consider first our appellate jurisdiction which is challenged by the motion of Basis to dismiss the appeal. Basis argues that the preliminary injunction in question is not an appealable interlocutory

---

1. These agreements were nondisclosure and patent waiver agreements.

2. In September 1987, the district court granted partial summary judgment to the defendants on MAI's claim that they had breached the patent waiver and nondisclosure agreements. On appeal, this court reversed, holding that "the trial court erred in declaring the two agreements at issue in this case were void for lack of any consideration[.]" *MAI Basic Four, Inc. v. Basis, Inc.*, 880 F.2d 286, 288 (10th Cir.1989). Since our holding dealt only with the narrow contract issue presented, we remanded for further proceedings in the trial court. Following our decision, however, MAI and its subsidiaries circulated numerous oral and written misrepresenta-

tions of our holding. These representations, which declared that MAI had been held to be the lawful owner of BB[x], provided some of the impetus for Basis' motion for this preliminary injunction.

3. Although Basis did not expressly move for the injunction pursuant to Fed.R.Civ.P. 65(a), the district court treated this motion as one under Rule 65(a). The court affirmatively found that an injunction bond was unnecessary in this case, as permitted by *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir.1987). See I R.Doc. 292 at 14–15 (citing *Coquina Oil*). We agree with this characterization—this is a Rule 65(a) motion in all but name.

decision within the provisions of 28 U.S.C. § 1292(a)(1). We disagree.

Section 1292(a) provides in part that "the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where direct review may be had in the Supreme Court[.]" Thus, by the plain terms of § 1292(a), interlocutory orders granting "injunctions" are appealable. Nevertheless, Basis argues here that under the Third Circuit's *Hershey* opinion, the present order is not an "injunction" within the meaning of § 1292(a).

A proper examination of *Hershey* first requires a brief review of the law developed on § 1292(a) appeals. Broadly speaking, two strands of analyses have developed under § 1292(a). The first strand holds that certain orders are so clearly "injunctions" within the meaning of the statute that no further inquiry is necessary. Thus, in *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 182, 75 S.Ct. 249, 253, 99 L.Ed. 233 (1955), *overruled on other grounds, Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), the Supreme Court observed that "[t]he appealability of routine interlocutory injunctive orders raise[s] few questions." Following this approach, we have held that "an interlocutory order expressly granting or denying injunctive relief fits squarely within the plain language of section 1292(a)(1)." *Tri-State Generation & Transmission Assoc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1351 (10th Cir.1989).

Since *Bodinger*, the courts of appeals have generally adopted a *per se* rule for dealing with orders like the instant one, holding that "[a]n order that prohibits a party from pursuing litigation in another court is unquestionably an injunction for purposes of interlocutory appeal under 28 U.S.C.A. § 1292(a)(1)." *See* 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure,* § 3923, at 48 (1977) (citing cases); *see also United States v. Dorgan,* 522 F.2d 969, 971 n. 1 (8th Cir.1975) (citing cases).[4] Thus, a straightforward application of this analysis to the instant facts would defeat Basis' motion to dismiss this appeal. The preliminary injunction on appeal not only prohibits the filing of other actions in any federal court; it also prohibits threatening to file such actions.

A second line of analysis, however, places greater emphasis on the "final judgment" rule and requires a more in-depth inquiry. In this connection, the Supreme Court has counseled that § 1292(a) "creates an exception from the long-established policy against piecemeal litigation" and this narrow exception is "keyed to the 'need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978) (quoting *Bodinger,* 348 U.S. at 181, 75 S.Ct. at 252). As the Court noted earlier in *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966), "[o]rders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view 'interlocutory' within the meaning of § 1292(a)(1)." Recently, this court has held that to sustain appellate jurisdiction, appellants must usually satisfy the three-part test of *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981): "1) the interlocutory order must have the practical effect of denying an injunction; 2) the order must have irreparable consequences; and 3) the order must be one that can be effectively challenged only by immediate appeal." *United States v. Colorado,* 937 F.2d 505, 507 (10th Cir.1991) (applying *Carson* ).

---

**4.** Notably, the Fifth Circuit has adopted another *per se* rule to deal with the issue presented here. That court holds that there is "a clean distinction between injunctions prohibiting proceedings in other courts, which are appealable, and orders, whether or not styled 'injunctions,' that control proceedings only in the court that issues the order. The latter are not appealable[.]" *Hamilton v. Robertson,* 854 F.2d 740, 741 (5th Cir.1988).

Of note, however, is the distinction drawn in this court's *Tri–State Generation* case between the two strands of analysis. The former strand applies to orders ruling on express motions for injunctive relief, whereas the latter applies only to orders that have "the practical effect" of granting or refusing an injunction. *See id.* at 1351. Thus, where an express grant or denial of an injunction is involved, *Tri–State Generation* holds that *Carson* and its progeny are "inapposite[.]" *Id.* Moreover, Basis does not argue that *Carson* applies here or that MAI's appeal would fail the *Carson* test. Indeed, Basis does not rely on *Carson* in its motion to dismiss. Rather, Basis asks that this court reject *Tri–State Generation*'s framework because it says that recent authority in the Third Circuit, *Hershey*, which construes the language of § 1292(a) in a new light, presents the proper analysis.[5]

Defendant Basis' motion to dismiss this appeal relies almost exclusively on the Third Circuit's *Hershey* opinion. In *Hershey*, a long-standing feud between Hershey Foods Corporation and Hershey Creamery erupted over which firm was entitled to use the "HERSHEY'S" trademark. In 1966, Hershey Creamery brought a federal suit against Hershey Foods in the Southern District of New York, which eventually resulted in a consent judgment. In 1990, however, Hershey Foods brought its own lawsuit against Hershey Creamery in federal court in the Middle District of Pennsylvania, seeking to enjoin Hershey Creamery from using the trademark in a recent expansion into the frozen yogurt market. Hershey Creamery immediately filed a motion in the federal district court in New York for an order construing and enforcing the consent judgment in the 1966 suit. In response, Hershey Foods moved for an order in the Pennsylvania federal court to halt Hershey Creamery's action in New York. The federal court in Pennsylvania granted the motion, enjoining Hershey Creamery from proceeding in New York pending final adjudication in Pennsylvania. Hershey Creamery appealed to the Third Circuit.

In support of its claim that appellate jurisdiction existed for that appeal, Hershey Creamery relied on *Maryland v. Atlantic Aviation Corp.*, 361 F.2d 873 (3d Cir.1966) (per curiam), which had adopted a *per se* rule that "an order directing a party to abstain from all further proceedings in an identical suit is an appealable interlocutory injunction." *Hershey* at 1275.[6] The *Hershey* court, however, eschewed a literal approach for interpreting § 1292(a), noting that "[t]he literal characterization of an order as an injunction only begins the inquiry into appealability." *Id.* at 1276 (quoting *Stateside Machinery Co. v. Alperin*, 526 F.2d 480, 482 (3d Cir.1975)) (emphasis removed). *Hershey* reasoned that the scope of § 1292(a) had been significantly narrowed after *Atlantic Aviation* was decided. Relying on both the Supreme Court's *Switzerland Cheese* opinion, and its own in *Cohen v. Bd. of Trustees of the Univ. of Medicine and Dentistry of New Jersey*, 867 F.2d 1455 (3d Cir.1989) (*en banc*), *Hershey* concluded that *Atlantic Aviation* had been undermined and implicitly overruled, respectively, by these cases.[7] *See Hershey* at 1278. The court reiterated that Hershey Foods' complaint in the Pennsylvania federal action sought an injunction only against Hershey Creamery's use of the trademark, concluding that:

---

**5.** In addition to other problems with Basis' arguments, discussed later, it also appears that Basis is asking this panel to effectively overrule or modify *Tri–State Generation*—something that may only be done by the court *en banc*. *United States v. Cooper*, 956 F.2d 960, 961–62 (10th Cir.1992).

**6.** As Basis notes in its Reply Brief, the *Atlantic Aviation* case provides one of the supporting citations for the *per se* rule discussed in Wright & Miller's treatise, and mentioned *supra* at 981.

**7.** In *Cohen*, the Third Circuit, sitting *en banc*, defined "injunctions" under § 1292(a)(1) as "[o]rders that are directed to a party, enforceable by contempt, and designated to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion." *Id.* at 1465 n. 9 (quotation and brackets omitted).

Because the Middle District of Pennsylvania's order [enjoining further proceedings in New York] does not grant part of the relief requested by Hershey Foods, it does not qualify as an appealable 'injunction' under our *en banc* decision in *Cohen.* Nor does it satisfy the test set out in *Switzerland Cheese.*

*Hershey* at 1279.

Here, in its motion to dismiss, Basis argues that *Hershey,* unlike *Tri–State Generation,* recognizes that Supreme Court doctrine has narrowed the definition of "injunction." Basis contends that the plain terms are but the starting point of the inquiry, and that this circuit should adopt *Hershey*'s holding that "in order to be an 'injunction' for purposes of section 1292(a)(1), the order must grant part of the relief requested by the claimant and must be immediately enforceable by contempt." *Id.* at 1277. Basis argues that because the district court's order here "does not address, grant or deny any of the ultimate substantive relief sought by MAI in its Complaint," the order is not appealable under *Hershey.* Basis Motion to Dismiss at 3.

We feel that Basis overstates the holding of *Hershey* by reading it to apply to *all* orders granting injunctive relief. *Hershey,* however, only purported to apply the *en banc Cohen* decision when it found the *per se* approach in *Atlantic Aviation* was "effectively overrule[d.]" *See Hershey* at 1278. The *Cohen* court, however, specifically retained an element of the *per se* rule, stating:

When a claimant makes a Fed.R.Civ.P. 65(a) motion for a preliminary injunction, and the court expressly rules on it, there is no difficulty in identifying the order as falling within section 1292(a)(1). Such

explicit orders must fall within the plain language of the section.

*Id.* at 1466 (citing *Bodinger*).

Indeed, a close reading of *Cohen* shows that *Hershey* only applied the second of three distinctions drawn in *Cohen* to the facts in *Hershey.* *Cohen*'s analysis essentially says that (1) orders ruling on preliminary injunction motions pursuant to Fed.R.Civ.P. 65(a) are "immediately appealable" as falling within the statute's express terms; (2) orders ruling on other motions which grant or deny part of the "ultimate relief" that the movant requests can be appealed if they are immediately enforceable by contempt; and (3) orders which have the indirect effect of denying injunctive relief may only be appealed if the *Carson* test has been satisfied. *See Cohen* at 1466–67. Certainly, under *Cohen*'s Rule 65(a) ruling, the instant motion is "immediately appealable" because it is a Rule 65(a) motion, covered by the "plain language" of § 1292(a). Thus, we feel that the *Hershey* holding is not convincing, because it speaks to orders different in kind from the instant one. Since we have here a motion by Basis which is in essence a Rule 65(a) motion, *Hershey* is unpersuasive.

■ We therefore conclude that we have jurisdiction of the instant appeal as one coming within the terms of 28 U.S.C. § 1292(a)(1), and we deny the motion to dismiss the appeal.[8] This appeal fits within the analysis in our *Tri–State Generation* interpretation of the statute; the injunction resulted from an express motion by Basis and is therefore appealable under the statute.

## III

■ In treating the merits of this appeal from the preliminary injunction, two of the main contentions of MAI for reversal may

---

**8.** We further deny MAI's request for costs and fees in responding to the motion to dismiss the appeal. Although the motion to dismiss was made after briefing and oral argument of this appeal, Basis has complied adequately with Tenth Circuit Rule 27.2.1 in explaining why an earlier filing was "impracticable." We disagree with MAI's statement that *Hershey* was foreordained by the Third Circuit's *Cohen* opinion. In

*Cohen,* the court found the order appealable under § 1292(a) through application of a *per se* rule. *See id.* at 1468. In *Hershey,* however, the order was held unappealable after the court recognized a limit on the application of the *per se* rule. Thus, Basis' motion is grounded on new authority that did not exist until late in this appeal.

be considered together. MAI contends that the trial judge erred in issuing the broad injunction prohibiting MAI from filing and prosecuting suits in any federal courts against third parties, and that the judge applied the wrong legal standard for such an injunctive order, which was issued in the absence of extreme circumstances and a strong showing that the disadvantages of the injunction were outweighed by the necessity for it. These claims bring our focus to the findings and conclusions in the Memorandum Opinion and Order of the district judge, which extensively reviewed the evidence introduced on the motion for the order.

## A.

The opinion and order made essentially the following findings and conclusions:

MAI claims that the defendants' marketing of software products constituted breach of employment agreements with MAI, theft of trade secrets, breach of the duty of loyalty, unfair competition, interference with contractual relations and civil conspiracy. The defendants counterclaim, alleging restraint of trade, unfair trade practices, unfair competition, and interference by MAI with prospective contractual relations.

The order related the defendants' motion for a preliminary injunction restraining MAI from threatening, filing or prosecuting suits against third party resellers of Basis' software products. The judge found that the defendants further sought to enjoin MAI from misrepresenting the status of this suit, but that the parties had resolved this issue. Memorandum Opinion and Order, I R.Doc. 292 at 1–3.

The trial judge further found there are over 4,200 employees of MAI and its foreign subsidiaries worldwide. Basis is in the business of manufacturing and selling computer software, particularly BB$^x$. Basis employs 35 people, 34 in Albuquerque and one in Paris, France. There have been numerous incidents since this suit began in which Basis has learned that MAI's representatives, locally and in Europe, have misrepresented in the software market the status of this suit and the Tenth Circuit's earlier decision. *See supra* note 2. These included representations that MAI had won the entire case and now owns BB$^x$, that MAI now distributes BB$^x$, and that Basis has encountered economic difficulties. The judge further found that potential customers of Basis in the United States and Europe have refused to do business with Basis because of MAI's misrepresentations which have had a damaging impact on Basis' sales.

The judge noted the parties held settlement conferences in September and October 1989; an attorney for MAI began the meetings by informing defendant Olson, President of Basis, that if the case was not settled, MAI would commence an action under a copyright theory against Basis' resellers. By late October it was clear that settlement was not going to be reached and MAI sent cease and desist letters to three of Basis' resellers, threatening copyright infringement suits if the resellers continued distribution of BB$^x$. The resellers are Original Equipment Manufacturers (OEM) of Basis, licensed to include a portion of BB$^x$ software with their own software products for distribution. OEMs are authorized to make object code copies of BB$^x$ software from a master diskette of BB$^x$. Basis had indemnity agreements with the three resellers. Under these agreements, Basis was bound to bear any expenses of defending the resellers against the threatened suits. Basis did not have indemnity agreements with all of its resellers.

It was found that these proposed secondary suits by MAI would cause loss of business to Basis and its resellers; it is not possible to determine the amount of business Basis could lose as the suits became known; an unknown number of potential and present resellers of Basis software would be deterred from entering into reseller relationships with Basis or from maintaining or expanding existing reseller business; and the threat of copyright litigation has caused at least one of the three resellers to launch an aggressive research and development effort for its application software on a platform other than BB$^x$.

The findings noted that MAI had not pursued copyright claims against Basis' resellers before October 24, 1989, three and one-half years into this litigation. MAI contends that the reason it had not pursued these claims sooner was because Basis had not provided MAI with the BB$^x$ source code on magnetic media which was necessary to determine whether any MAI copyright was infringed by the manufacture and distribution of BB$^x$ software.

The judge found that Basis gave MAI a paper listing of its BB$^x$ source code in January 1987. MAI retained a software expert in December 1988. Basis gave MAI the BB$^x$ source code on magnetic media in June 1989. MAI provided its expert a copy of its BB/M software and Basis' BB$^x$ software in June or July of 1989, and gave him a copy of the BB$^x$ source code paper listing in August 1989 shortly before he left for Europe on a sabbatical. It was found that MAI's software expert is presently unable to express any conclusion as to the degree of similarity of the parties' software because his comparison has not been completed. The judge found that the long delay by MAI in connection with its comparison of the similarities of the softwares has never been explained; MAI had not yet registered its software with the copyright office, which is a prerequisite to suit, although MAI states that its policy is not to register software until just before litigation.

The judge's order concludes that MAI's representations of the status of this suit and MAI's sending out of cease and desist letters to three of the Basis resellers was a pattern of vexatious and oppressive conduct; the letters were sent to threaten, harass and oppress Basis with the purpose of subjecting it to economic coercion; the actual filing of reseller suits by MAI would constitute a misuse of litigation by vexatious and oppressive foreign suits which would be a continuing part of the pattern; and the court could properly enjoin such suits, pending the final determination of this suit. The judge concluded that MAI had taken no affirmative steps to pursue copyright infringement claims at any time before the settlement discussions and its expert, as of the time of the order in March 1990, could not express an opinion on the similarity of BB$^x$ and BB/M; MAI therefore has no objective good faith expectation of prevailing in these threatened suits.

The judge noted that the traditional standards may not apply to an injunction against a vexatious litigant; he concluded, however, that Basis had met its burden under those standards by establishing that it would suffer irreparable injury unless the injunction issues; the threatened injury to the movant outweighs whatever damage the injunction might cause the opposing party; the injunction would not be adverse to the public interest; and there was a substantial likelihood that the movant Basis will eventually prevail on the merits, citing *Koerpel v. Heckler*, 797 F.2d 858, 866 (10th Cir.1986).

The judge noted that where the first three criteria have been clearly established, the Tenth Circuit has adopted a modified version of the fourth requirement, which is to evaluate whether the movant has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for litigation and more deliberate investigation. Because the first three requirements for a preliminary injunction were clearly satisfied, the modified version of the fourth was applicable; Basis has raised questions going to the merits of MAI's claims so serious and substantial as to make them a fair ground for litigation.

The order issued the preliminary injunction providing that until conclusion of the suit, MAI, its officers, agents and employees were enjoined from threatening, filing or prosecuting lawsuits "in any federal court against third party resellers of Basis software products based upon any claims that their marketing of Basis software violates any alleged rights of MAI." Memorandum Opinion and Order, I R.Doc. 292 at 14.

## B.

From what we have related above, it is apparent that the district judge received

considerable evidence at the hearing on the preliminary injunction and made extensive findings and conclusions. With respect to his findings and conclusions, MAI argues that the district court's conclusion that MAI engaged in a pattern of vexatious and oppressive conduct justifying the injunction is "clearly erroneous." Appellant's Opening Brief at 19-27. However, in actuality MAI's arguments do not demonstrate that the subsidiary historical findings about the misrepresentations are clearly erroneous on the basis of the record evidence. Essentially, the arguments of MAI are that the findings are legally insufficient to sustain such a preliminary injunction. MAI's opening paragraph on this issue concludes that "[t]his conduct, even if true, falls far short of the kind of vexatious conduct necessary to sustain an injunction like the one entered below." Appellant's Opening Brief at 19.

We find no persuasive argument that the subsidiary findings on misrepresentations were clearly erroneous. Nevertheless, we must agree with MAI that the findings do not support the broad preliminary injunction entered, and they do not justify the exercise of discretion for granting such extraordinary relief as to enjoin MAI from filing or prosecuting suits "in any federal court against third party resellers of Basis Software products based upon any claim that their marketing of Basis software violates any alleged rights of MAI." Memorandum Opinion and Order, I R.Doc. 292 at 14.

The opinion and order of the district court relies principally upon *Thomas French & Sons, Ltd. v. Carleton Venetian Blind Co., Inc.*, 34 F.Supp. 850-51 (E.D.N.Y.1940), and *Span–Eng Associates v. Wiedner*, 771 F.2d 464, 470 (10th Cir. 1985), and an annotation on this subject in 42 A.L.R.Fed. 592 (1979). I R.Doc. 292 at 8.

We agree that *Span–Eng* lays down the proper standard for the issuance of such an injunction. There a Utah federal court suit was brought by plaintiffs in a securities fraud action against a number of defendants. At the request of several of these defendants, the Utah federal court enjoined the plaintiffs and their attorneys from proceeding in another related securities fraud action they had subsequently filed in the federal court of the District of Arizona. We considered the reasons relied on by the Utah federal court for its injunction: the possibility of inconsistent results in the suits; the duplication of judicial effort; the probability that the plaintiffs were engaged in forum or judge shopping; and the plaintiffs' ability to obtain complete relief in the Utah action.

We held that there was an abuse of discretion in granting the injunction against the Arizona litigation. We pointed out that there was nothing impermissibly inconsistent between a finding in Utah that a Utah defendant was guilty of securities fraud and an Arizona finding that an Arizona defendant was not guilty of the same charge. *Span–Eng*, 771 F.2d at 468. Further, we said that considerations of judicial economy should rarely if ever lead to such broad curtailment of access to the courts, particularly where the record contained no findings on the extent of duplication of effort. *Id.* at 469. Furthermore, with respect to forum shopping, we were convinced that the Utah court's point was not persuasive because the plaintiffs were entitled to protect themselves against expiration of the statute of limitations on claims against the Arizona defendants whom they were unable to join in the Utah action. *Id.* at 469–470. Lastly, we said that any conclusion that the plaintiffs in Utah could obtain complete relief was speculative at best. *Id.* at 470.

Relying upon our earlier holding in *Commodity Futures Trade Commission v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir.1983), we noted that we had emphasized in *Chilcott* that "[t]he right to proceed in court should not be denied except under the most extreme circumstances," *Span–Eng*, 771 F.2d at 468 (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir.1971)). And we said that "these precautions are of particular importance where, as here, restraints on other courts are contemplated." *Span–Eng*, 771 F.2d at 468. In *Span–Eng*, we further held that "when an injunction

sought in one federal proceeding would interfere with another federal proceeding, ... such injunctions should be granted *only in the most unusual cases.*" *Id.* (quoting *Bergh v. Washington,* 535 F.2d 505, 507 (9th Cir.), *cert. denied,* 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976)) (emphasis in original).

In the instant case, we are not persuaded that the stringent standard of *Span–Eng* has been met. We have detailed the findings and conclusions made here and cannot agree that they make a showing of extreme circumstances or that the injunction should be granted because this is a most unusual case. The judge apparently intended to connect the findings and the injunction when he stated: "The actual filing of reseller suits by MAI would constitute a misuse of litigation in the nature of vexatious and oppressive foreign suits which would be brought as a continuing part of the pattern."

█ Despite the connection the court made between the misrepresentations and the threatened suits, the case for such an injunction was not demonstrated by Basis. In fact, with respect to one of the misrepresentations, that relating to the status of this lawsuit, the judge noted that an injunction against such misrepresentations concerning the suit had been sought and the parties had resolved this issue. Memorandum Opinion and Order, I R.Doc. 292 at 3. In the same manner, perhaps other judicial relief by way of damages or injunctive orders should be considered on remand to protect against misrepresentations, but such relief does not make an injunction against all copyright actions by MAI in any federal court a necessary part of the reme-

dy. Restrictions on future suits may in some instances be imposed "as long as they are designed to assist the district court in curbing the particular abusive behavior involved." *Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir.1986). However, conditions on litigation cannot be so burdensome as to deny a litigant meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Cotner,* 795 F.2d at 902. It will be noted that the predicate litigation, of which the disputed injunction is but a satellite, is about six years into pretrial proceedings. In considering future relief, the district court may properly inquire as to what is causing the delay in bringing the main proceedings to trial and final judgment.

We note one feature in particular concerning the *Span–Eng* opinion which applies here. This is the point that the Arizona action in *Span–Eng* was a permissible attempt by the plaintiffs to protect themselves against expiration of the statute of limitations on claims against the Arizona defendants. 771 F.2d at 469–70. Here, in some jurisdictions at least a similar problem exists for MAI in that copyright infringement claims under some authorities would be barred three years after the occurrence of the infringing acts.[9]

While our opinion in *Chilcott* dealt with a more extreme situation in some respects, its principles cannot be dismissed. *Chilcott* did involve a stay in the federal district court in Colorado of actions by other parties in separate proceedings in the federal and state courts in Arizona. Here, it is true that the preliminary injunction restrains only MAI, which is a party in the instant case. The principles of *Chilcott* were applied, however, in *Span–Eng,*

---

**9.** The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Under this statute it has been held that the rule concerning continuing wrongs applies and that only the last infringing act need be within the statutory period. *Taylor v. Meirick,* 712 F.2d 1112, 1118–19 (7th Cir.1983). However, the Sixth Circuit has held that the statute bars recovery on any claims for damages which accrued more than three years before commencement of suit. *Hoste v. Radio Corp. of*

*America,* 654 F.2d 11 (6th Cir.1981); *see also Mount v. Book-of-the-Month Club, Inc.,* 555 F.2d 1108, 1111 (2d Cir.1977) (applying similarly worded former limitation provision).

There is thus a division in the interpretations of the statute. *See* 3 Nimmer on Copyright § 12.05 at 12–101 to 12–105. The question is undecided by the Supreme Court and several circuits. We feel that the substantial risk of claims of MAI being barred may not be disregarded. This is an added factor pointing to the inadvisability of the broad injunction granted.

which is similar to the instant case. Under *Chilcott,* when an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint; such injunctions should be granted only in the most unusual cases. *Chilcott,* 713 F.2d at 1484.

We have considered *Thomas French & Sons, Ltd. v. Carleton Venetian Blind Co., Inc.,* 34 F.Supp. 850 (E.D.N.Y.1940), relied on by the district court. There a restraining order was entered barring the plaintiffs from bringing a suit for alleged infringement of patents in other proceedings, but relating to the patents described in the bill of complaint in the court issuing the restraining order. The *French* opinion relied on vexatious and unnecessary litigation as a justification for the restraining order. *Id.* at 851. We note, however, that the instant case is one where the injunction was more extreme and less justified. In the instant case there are no copyright claims asserted by MAI and no copyright issues are tendered for determination. Thus, to restrain MAI from asserting in any federal court claims not in litigation here is considerably more extreme.

In sum, we are not persuaded that Basis has made a showing sufficient to justify the preliminary injunction. Our precedent requires that such injunctions should be granted only in the most unusual cases. *Chilcott,* 713 F.2d at 1484. That showing was not made here and we are satisfied that the broad preliminary injunction entered was an abuse of discretion.

### IV

The determinations we have made above are sufficient for disposition of this interlocutory appeal. We therefore feel it unnecessary to discuss other contentions at this stage of the litigation.

In sum, the motion of Basis to dismiss the appeal is DENIED, and the preliminary injunction entered against MAI in the district court is REVERSED.