**UNITED STATES of America, Plaintiff,**

**v.**

**Timothy James McVEIGH and Terry Lynn Nichols, Defendants.**

**Criminal Action No. 96–CR–68–M.**

United States District Court,
D. Colorado.

June 13, 1996.

See also 931 F.Supp. 753.

Patrick M. Ryan, U.S. Attorney for the Western District of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Special Assistant U.S. Attorney, Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, Jeralyn E. Merritt, Denver, CO, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for defendant Nichols.

MEMORANDUM OPINION AND ORDER REGARDING EXTRAJUDICIAL STATEMENTS BY ATTORNEYS AND SUPPORT PERSONNEL

MATSCH, Chief Judge.

Early on in this criminal proceeding, Judge Wayne Alley signed an Agreed Dis-

covery Order which included the following provision:

> Discovery materials may be disclosed only to the parties, their counsel and agents, except that such materials may be disclosed as necessary: (a) during court proceedings, including trial, hearings or legal filings in this case; or (b) to potential witnesses, provided that such witnesses are made aware of and agree to honor the terms of this protective order.

On April 26, 1996, counsel for defendant Terry Lynn Nichols filed a motion asking that the court conduct an *in camera* inquiry to determine whether that order has been violated and attached a declaration of lead counsel, Michael Tigar, to support an allegation that persons with access to discovery documents have disclosed some of them to news reporters. Three days later the government joined that request in a response with a declaration of Joseph H. Hartzler, Special Attorney to the U.S. Attorney General, describing unsuccessful efforts by the government to determine the source of suspected leaks of information from discovery documents. The government also questioned the propriety of the conduct of Timothy McVeigh's lead counsel, Stephen Jones, in generating publicity by his comments in news conferences, interviews and public statements. Twelve exhibits were attached as illustrations of such extrajudicial statements. The prosecutors ask for a court order restricting extrajudicial statements by all counsel "to protect all parties' right to a fair trial by an impartial jury." (Response filed April 29, 1996, page 9).

The court discussed these filings with counsel at *in camera* conferences on April 30 and May 1, 1996, and issued an oral order modifying Judge Alley's order by directing that no discovery material be included in any pleadings or briefs and that if use of copies of such documents or references to information contained in them is necessary to a proper presentation of a party's position that portion of the filing should be submitted under seal. That order was a temporary measure to avoid escalation of the dispute during the time needed for consideration of the issues raised by the requests for orders. The court also ordered counsel to file additional papers addressing the suggestions for a court directed investigation of the allegations of past improper disclosures and restriction of future extrajudicial statements, and to submit their respective proposals for court orders under seal.

On May 17, 1996, Mr. Jones filed defendant McVeigh's response to the papers filed by defendant Nichols and the government, attaching more than 900 pages of material in two appendices and 28 exhibits. After a cursory review of that filing, the court, *sua sponte*, ordered the sealing of the entire pleading on the assumption that the open filing was made by mistake since the papers included references to discovery materials, as, for example, footnote 6 on page 9. Defendant Nichols filed his supplemental memorandum under seal on May 17, 1996. All parties filed proposed orders under seal, as directed.

On May 22, 1996, defendant McVeigh filed a motion to unseal his response of May 17, 1996, together with the exhibits and appendices, excepting Exhibit 1 and his proposed order. In that motion Mr. Jones appropriately observed that he was responding to pleadings in the public file and asserted that the sealing of his complete filing was unfair and prejudicial to his client's interests.

The court gave other counsel an opportunity to comment on the motion to unseal the McVeigh filing. Their responses indicate that the issue is moot because copies were given to some news reporters before the papers were filed with the clerk. For that reason and because other counsel have not raised any objection to particular portions of the voluminous filing, the McVeigh response and attachments, excepting Exhibit 1 and the proposed order, will be unsealed upon entry of this order.

Defendant Nichols filed supplemental papers on May 30, 1996, and the government filed its additional response on June 3, 1996. On May 30, 1996, counsel for Mr. McVeigh filed a sealed motion objecting to the court's oral order prohibiting the attachment of discovery material to pleadings, another memorandum concerning possible sources of leaks of discovery information and an objection to

the orders proposed by the government. On May 31, 1996, defendant Nichols filed another supplement to his memorandum about leaks of discovery material.

After a review of all of these papers, both sealed and unsealed, the court now makes the following findings and conclusions.

All parties want to avoid such pretrial publicity as would create a substantial likelihood of material prejudice to a fair trial. The explosion at the Murrah Federal Building in Oklahoma City on April 19, 1995, was widely perceived as a shocking event generating intense public interest and widespread news coverage. The initial reports of investigators that the building had been bombed increased the intensity of that interest. The arrest of suspects generated extensive efforts by news agencies to find out what the government was relying on to charge these men. The resources, creativity and competitiveness of the news industry became evident in exhaustive efforts to satisfy public curiosity about the accused.

The history of news coverage of this case was explored in depth at the hearings on defendants' motions for change of venue and summarized in the Memorandum Opinion and Order of February 20, 1996. As more pleadings have been filed and court hearings held, there has been growing speculation about what evidence may be introduced at trial and considerable conjecture about the strategy and tactics of the prosecution and defense.

Defense counsel are understandably concerned that the pretrial publicity may predispose public opinion to guilt of the defendants. Mr. McVeigh's lawyers have been very sensitive to the possible effects of those pictures of him and reports about him that they characterize as condemnatory. Mr. Jones has been active in generating countervailing publicity by granting interviews and making public statements about the investigations the McVeigh defense team has conducted, including leads to other suspects and theories about possible perpetrators. Mr. Jones has also helped Mr. McVeigh obtain personal publicity to dispel the demonization effects of the early camera coverage of his arrest and detention. The prosecutors have objected to these efforts and counsel for Mr. Nichols has expressed some concern that the McVeigh attempts to influence public opinion have added to the volume of publicity and may make it more difficult to select an open minded jury and obtain a fair trial of the evidence.

■ The court has not previously attempted to restrict extrajudicial statements by any counsel, relying on their professionalism and integrity in following the general principles practiced by lawyers of their experience and stature, recognizing that the unique circumstances of this case require some flexibility. Justice Kennedy, writing for the Supreme Court of the United States, made the following pertinent comment about the role of defense counsel in the opinion deciding *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1042, 501 U.S. 1030, 1043, 115 L.Ed.2d 888 (1990):

> An attorney's duties do not begin inside the courtroom door. He or she cannot ignore the practical implications of a legal proceeding for the client. Just as an attorney may recommend a plea bargain or civil settlement to avoid the adverse consequences of a possible loss after trial, so too an attorney may take reasonable steps to defend a client's reputation and reduce the adverse consequences of indictment, especially in the face of a prosecution deemed unjust or commenced with improper motives. A defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried.

Rule 3.6 of the Colorado Rules of Professional Responsibility, adopted by this court in D.C.COLO.LR 83.6, generally prohibits extrajudicial statements except a lawyer may state without elaboration "that an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved[.]" The interpretation of that proviso is a matter upon which there can be reasonable disagreement. The appropriate scope, manner and method of making such extrajudicial statements must

be considered in the context of a particular case and the court has the responsibility to set out standards when there is such a dispute as presented in the filed papers.

Both the content and the tone of these papers demonstrate the need for court intervention to guide the conduct of counsel and those persons associated with them to avoid lowering the level of advocacy in this case. When lawyers begin to quarrel about each other the arguments tend toward the acrimonious. Disputes of this type divert time, energy and resources from the primary task of preparing for a trial to determine the provability of the charges made against these defendants.

Many of the examples of press reports, magazine articles, telecasts and radio broadcasts in the filed papers make references to unnamed sources in ways suggesting that they are lawyers in this case. Since the court does not have access to the discovery documents and materials there is no way to independently judge the allegations that some of the information and misinformation being distributed came from copies of documents disclosed under the rules of reciprocal discovery. That lawyers in the case have improperly released such material is not the only inference which may be drawn. There are other possible sources. The volume of discovery in this case is extraordinary. Thousands of people have been interviewed by investigators for the government and the defendants. There is no effective way to restrict those persons from talking about those interviews with anyone. Common sense suggests that more than a few of them have freely discussed with media representatives and others what they think they know and suspect about the case.

Discovery material presumably includes copies of documents to which the public has full access. There has been extensive investigative reporting by news agencies and it is to be expected that they have independently uncovered some of the same material that has been exchanged in discovery. In the full context of the widespread public discussion of the Oklahoma City explosion, there is little likelihood that any type of court inquiry would produce any definitive determination.

The court has been asked to order all lead counsel to conduct an inquiry of their respective "teams" and report whether any such person has disseminated discovery material to the press in any form. An alternative suggestion is that the court submit written interrogatories to lead counsel to answer after making due inquiries of those having access to the discovery. It is reasonably foreseeable that either approach would draw challenges to the responses, requiring some type of follow-up hearing. Recognizing that confidential and sensitive material would be involved, counsel ask that they be heard *in camera.* It is doubtful that any such court hearing could be closed to the public. The public spectacle of a quarrel among lawyers over allegations of ethical improprieties would greatly reduce community confidence in this adjudicative process.

The news coverage of such hearings would focus on the personalities of the advocates and deflect attention from their advocacy of the important legal and factual issues which will determine the outcome of this case. The parties exchanged information with the expectation that it would remain confidential during the discovery process. A hearing on allegations of leaks would necessarily destroy that confidentiality. Moreover, the numbers of persons to be inquired of would necessitate an undue expenditure of time and money. To be thorough, counsel for the government would have to question all of the persons in the federal, state and local law enforcement agencies who have had any part in the investigation as well as their superiors.

There is little hope that this diversion from the task of trial preparation would be sufficiently productive to satisfy the expressed concerns or allay the suspicions raised in these filings. For these reasons, the court will not now conduct any inquiry into past public disclosures of discovery information. The best method for avoiding prejudicial pretrial publicity is to minimize the time necessary for preparation for the trial by requiring all participants to focus their energy on that effort.

A reading of the papers filed does reflect some disagreement about the scope of confi-

dentiality of discovery material and other information in this case. The differences expressed are those that have been widely discussed for years in the continuing policy debate about the sometimes antithetical societal values of a free press and fair trial. To this time, the court has relied upon the professionalism and integrity of the participants in the process. Without suggesting that there have been any violations of general ethical principles, it is now necessary for the court to articulate the particular standards to be followed in this litigation in the form of this order for future guidance in all forms of extrajudicial statements about this litigation.

 This case began in the Western District of Oklahoma. The local rules of that court include Rule 27 based on ABA Standards for Criminal Justice, Standard 8–1.1. Counsel were obliged to follow that rule before the change of venue. It is appropriate to continue using the essence of it in this order with modifications to make it more specific to this proceeding. It is now ORDERED that:

A. None of the lawyers appearing in this case or any persons associated with them, including any persons with supervisory authority over them, will release or authorize the release of information or opinion about this criminal proceeding which a reasonable person would expect to be disseminated by any means of public communication, if there is a reasonable likelihood that such disclosure will interfere with a fair trial of the pending charges or otherwise prejudice the due administration of justice.

B. This duty to refrain from prejudicial disclosures requires all counsel to take reasonable precautions to prevent all persons who have been or are now participants in or associated with the investigations conducted by the prosecution and defense from making any statements or releasing any documents that are not in the public record and that are reasonably expected to be publicly disseminated which would be likely to materially prejudice the fairness of this criminal proceeding.

C. None of the lawyers appearing in this case or any persons associated with them, including any persons having supervisory authority over them, shall release or authorize the release of any extrajudicial statement which a reasonable person would expect to be disseminated by any means of public communication, concerning any of the following matters related to this case:

(1) The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the defendants.

(2) The existence or contents of any statements given by the defendants to any law enforcement personnel or the refusal or failure of the defendants to make any statements to law enforcement personnel.

(3) The performance of any examinations or tests or any defendant's refusal or failure to submit to any examination, or test.

(4) The identity, testimony, or credibility of all prospective witnesses.

(5) The possibility of a plea of guilty to the offenses charged or a lesser offense.

(6) Any opinion as to the guilt or innocence of the defendants or as to the merits of the case or the quality or quantity of evidence as to any charge in the case.

D. The foregoing shall not be construed to prevent any of the lawyers appearing in this case or any persons associated with them, including any persons having supervisory authority over them, from quoting or referring without comment to public records of the court in the case; from announcing the scheduling or result of any step in the judicial process; from requesting assistance in obtaining evidence; or from announcing without further comment that the defendants deny all charges made against them.

E. Before the trial jury is empaneled, none of the lawyers in this case or those associated with them, including those with supervisory powers over them, shall give or authorize any extrajudicial statement or interview relating to the trial or the parties or issues in the trial, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial, except that a lawyer may quote from or refer without comment to

public records of the court in the case and may give such explanations of pleadings and hearings as may assist the public in understanding the legal issues being presented and the relationship of any hearing or ruling to the trial process without expressing any opinions as to the merits of the positions and arguments of any party or giving any predictions concerning the expected result.

F. All court supporting personnel, including among others, marshals, deputy marshals, court clerks, deputy court clerks, bailiffs, court reporters and employees or subcontractors retained by the court-appointed official reporters, are prohibited from disclosing to any person, without authorization by the court, any information relating to this criminal case that is not a part of the public records of the court. All personnel are also forbidden from divulging information concerning any sealed filings, *in camera* arguments and hearings held outside the presence of the public.

G. Counsel for all parties shall exercise caution in filing papers in the public record in this case to avoid references to documents exchanged in discovery or such references to information contained in them as would reveal the sources and contents of those documents. If a proper presentation of a party's position requires the use of copies of discovery documents or such references to the information in them as described herein, that portion of the filing shall be submitted under seal. If an entire pleading involves discovery material, the party submitting it will proceed under paragraph 3 of this court's Memorandum Opinion and Order on Media Motions entered on January 24, 1996.

H. These orders supersede all previous orders concerning extrajudicial statements and discovery material.