**UNITED STATES of America, Plaintiff,**

**v.**

**Timothy James McVEIGH, Defendant.**

**In the Matter of Petition of COL-ORADO–OKLAHOMA MEDIA REPRESENTATIVES.**

**Criminal Action No. 96–CR–68. No. 97–X–29.**

United States District Court, D. Colorado.

May 12, 1997.

---

Patrick Ryan, U.S. Atty. for the Western District of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Sp. Asst. U.S. Atty., Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, Jeralyn E. Merritt, Denver, CO, for McVeigh.

Michael Tigar, Ronald G. Woods, Denver, CO, for Nichols.

Kelli L. Sager, Los Angeles, CA, for Colorado–Oklahoma Media Representatives.

## AMENDED MEMORANDUM OPINION AND ORDER ON PETITION TO VACATE AND MOTION TO SET ASIDE OR MODIFY ORDER PROHIBITING OUT OF COURT COMMENTS

MATSCH, Chief Judge.

On April 23, 1997, counsel for defendant Timothy McVeigh moved to set aside or modify the Order Prohibiting Out of Court Comments entered, sua sponte, on April 16, 1997. Two organizations, identified as the Colorado–Oklahoma Trial Group and the Colorado–Oklahoma Print Media Group, filed an ancillary petition to vacate the April 16th order and to obtain access to information about jurors. Briefs were submitted and oral argument was heard on April 26th. Counsel for defendant Terry Nichols orally joined in support of the motion to modify the order. At the argument, the court explicitly excluded Terry Nichols and his counsel from the prohibitions of the subject order because the trial of the evidence against Mr. Nichols has not begun. Accordingly, the order of June 13, 1996 remains in effect for pre-trial proceedings concerning defendant Terry Nichols. The following findings and conclusions support the April 16th order which will stand without change.

There is no precedent in American history for the bombing of the Murrah Building in Oklahoma City. It shocked the nation and commanded the immediate attention of everyone concerned with public safety and welfare. News organizations quickly responded to the compelling need for collecting and distributing information about the event, its effects and everything of possible assistance in answering the questions of causation and responsibility for the explosion. Law enforcement agencies actively enlisted the aid of the news media in conducting the official investigation. There can be no doubt of the positive role of free press enterprises in serving the public interest in these circumstances. Their open channels of communication and extensive resources provided invaluable opportunities to connect up scattered pieces of information.

When the focus of the official investigation narrowed to the suspects now before the court, the news media continued their independent efforts to learn and explain what had happened. Unrestricted by any rules of relevance or reliability, and energized by entrepreneurial motivation, reporters and journalists have continued to follow all leads. Nothing in the subject order restricts that activity.

This prosecution began with an indictment filed in the Western District of Oklahoma. With the agreement of all parties, Judge Alley entered an order preventing public disclosure of discovery materials and information. Many pleadings and other papers were submitted and sealed without explanation.

News media agencies moved to unseal all filings and one of the first acts of this court, upon assignment to this case, was to hear those motions in Oklahoma City and enter a Memorandum Opinion and Order on Media Motions, dated January 24, 1996, establishing criteria for restricting public access to discovery and applications for services made ex parte as required by 21 U.S.C. § 848(q). *United States v. McVeigh,* 918 F.Supp. 1452, 1464 (W.D.Okla.1996). Under those criteria, pre-trial adjudicative rulings have been made after hearings in open court.

While this case was in Oklahoma, all counsel were subject to the limitations imposed by Rule 27 of the local rules governing proceedings in the Western District of Oklahoma. That rule imposes a duty of non-disclosure on prosecutors and defense counsel as to information and opinions about criminal proceedings when the expected publication of such disclosures poses a reasonable likelihood of interfering with a fair trial or prejudicing the "administration of justice." W.D. Okla. Local R. 27. The rule lists what matters are considered appropriate for publication in all cases and then relies on the discretion of counsel in following its general guidance for all other matters in particular cases.

The intense press scrutiny of the investigation of the explosion and the prosecution of these charges has generated such widespread publicity that extraordinary measures have been required to protect against the potential disruption of the orderly process necessary for a fair trial. A violation of the secrecy obligation under Fed.R.Crim.P. 6(e) compelled Chief Judge Russell, of the Western District of Oklahoma, to remove a grand juror.

Counsel for the accused do not have an institutional structure for investigation comparable to that of the law enforcement agencies serving the prosecution. That is the underlying reason for discovery under Fed. R.Crim.P. 16 and the government's duty of disclosure of exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Extensive resources and support services have been provided for both defendants under 21 U.S.C.

§ 848(q) to assist in the daunting task of analyzing the huge volume of discovery material and preparing their opposition to the charges made against them. Defense lawyers have a legitimate need to communicate with the news media in preparing for trial. It is not uncommon for lawyers on both sides of a criminal case to do a bit of bartering in the information market.

The volume, intensity and character of publicity about this case compelled the court to take the extraordinary step of changing venue under Rule 21(a) for the reasons stated more completely in the memorandum opinion and order of February 20, 1996. *United States v. McVeigh,* 918 F.Supp. 1467 (W.D.Okla.1996). After hearing suppression motions, and finding that separate trials were required to avoid prejudice, the court entered an order under Rule 14 and directed that Timothy McVeigh be tried first.

The difference in the cases of these two defendants has had an apparent influence in the approaches taken by their respective defenders. Stephen Jones, lead counsel for Timothy McVeigh, conducted a very active and aggressive campaign to mitigate the negative effects of statements from government sources and from broadly circulated speculations about what could be "evidence" against his client. Inevitably, conflicts developed and controversies among counsel for the parties threatened serious deterioration of the level of advocacy necessary for the adjudication of the many novel issues presented in this very unusual case. In response, on June 13, 1996, this court issued a Memorandum Opinion and Order Regarding Extrajudicial Statements by Attorneys and Support Personnel published as *United States v. McVeigh,* 931 F.Supp. 756 (D.Colo.1996). That order accommodated the conflicting interests involved in pre-trial proceedings. It permitted counsel to assist the media groups in providing public understanding of the proceedings. This court denied motions for hearings to investigate the sources for and propriety of disputed public statements, saying: "The public spectacle of a quarrel among lawyers over allegations of ethical improprieties would greatly reduce community confidence in this adjudicative process."

*United States v. McVeigh*, 931 F.Supp. at 759.

Although the order did not end all controversies about public statements by counsel, the court made no changes in the order until April 16, 1997, during the third week of jury selection, when the court entered the order now under consideration. A jury was empaneled and trial began with opening statements on April 24, 1997. Presentation of the evidence to the jury and the court's rulings on all evidentiary objections are in open court in a courtroom with special accommodations for news reporters. Half of the public seating has been reserved for those who obtained press credentials. The trial exhibits are shown on a television type monitor to those in the public area as they are introduced and discussed by the witnesses. Trial transcripts and copies of the exhibits admitted are provided at the conclusion of each trial day. The proceedings are being monitored by sound transmission to an auxiliary courtroom and to a pressroom in an adjacent building. Part of the plaza in front of the courthouse has been set aside for exclusive use of news organizations for telecasting and broadcasting by reporters and commentators observing the trial.

All parties in this case opposed sequestration of the jury in court filings made on September 28, 1995. During jury selection the court assured all prospective jurors that they would not be subject to the privations of confinement and isolation from family and friends during this trial. All jurors have been instructed to avoid publicity about the case and they are given daily reminders of their obligation to decide solely on what they hear and see as evidence in the case. While the court has full confidence in these jurors and trusts them to follow these instructions, there is always the possibility that some headline or broadcast teaser will be seen or heard. The potential for prejudice from an inadvertent exposure to publicity can be greatly diminished by assurance that the news stories are not based on disclosures by counsel or those who are participating in the conduct of the trial of Timothy McVeigh. That assurance can only be provided by an order as clear and direct as that entered on April 16, 1997.

The order does not impose any restriction on news media. Trial advocates and those associated with them are subject to many restrictions for the protection of the adjudicative process. They are officers of the court with an obligation to the system of justice. The Supreme Court in *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), struck down the Nevada Supreme Court's application of a bar rule restricting attorneys in their public comments because a "safe harbor" provision made the prohibition too vague to give fair notice of what comments would result in disciplinary action. In doing so, the justices were divided in their views of the constitutional standard supporting a prior restraint on lawyer speech. Five justices agreed with the position expressed by Chief Justice Rehnquist that advocates may be restrained when there is a substantial likelihood of material prejudice to the proceedings. *Id.* at 1075, 111 S.Ct. at 2745.

This case calls for a blanket bar on out of court comments because no lesser restriction would adequately protect against a substantial likelihood of prejudicing the proceedings. As noted in the April 16th order, statements from the prosecutors, defense counsel, government officials, and agents having official responsibilities relevant to this case, the defendant and court personnel, may be expected to be perceived quite differently by jurors accidentally exposed to them. The compelling interest is the protection of jurors from being influenced by any such statements which may break through the barriers constructed by them under the court's instructions.

Defense counsel have asked the court to recognize a limited right for them to reply publicly about extrajudicial statements or comments to which they cannot respond in court. The difficulty with a modification of the order to grant such a right of reply is the impossibility of providing an acceptable definition of the scope of the exception. If and when circumstances show the need for any of the trial participants to respond publicly to some story that may affect their performance

in this trial process, a request for such relief from this order as may be necessary will be considered promptly.

Upon the foregoing, it is

ORDERED that the media groups' petition to vacate the April 16, 1997 order and the motion to set aside or modify that order filed by defendant Timothy McVeigh are denied. The order stands.