**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 5 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TIMOTHY JAMES McVEIGH,

     Defendant-Appellant,

and

TERRY LYNN NICHOLS,

     Intervenor.

---

STATE OF OKLAHOMA,

     Amicus Curiae.

No. 98-1247

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 96-CR-68-M)**

---

Submitted on the Briefs:[*]

---

[*]Pursuant to the court's order dated July 17, 1998, this panel has determined unanimously that oral argument is not necessary in this matter.  See Fed. R. App. P. 34(f);

-1-

Sean Connelly, Special Attorney to the United States Attorney General, Denver, Colorado (Patrick M. Ryan, United States Attorney, Oklahoma City, Oklahoma, Larry A. Mackey, Special Attorney to the United States Attorney General, Denver, Colorado, with him on the briefs), for Plaintiff-Appellee.

Robert Nigh, Jr., Tulsa, Oklahoma, and Richard Burr, Houston, Texas, for Defendant-Appellant.

Susan L. Foreman, Michael E. Tigar, and Adam Thurschwell, Boulder, Colorado, (Jane B. Tigar, Boulder, Colorado, with them on the briefs), for Intervenor Terry Lynn Nichols.

Robert H. Macy, District Attorney, and Patrick J. Morgan, First Assistant District Attorney, Oklahoma City, Oklahoma, for Amicus Curiae State of Oklahoma.

------

Before **EBEL**, **KELLY**, and **MURPHY**, Circuit Judges.

------

**MURPHY**, Circuit Judge.

------

Defendant Timothy McVeigh appeals from the district court's June 24, 1998, order rescinding certain restrictions which prevented federal agents from cooperating with state officials investigating the Oklahoma City bombing[1]. With intervenor Terry Lynn Nichols, Mr. McVeigh maintains the district court erred when it granted the government's motion to rescind a previously imposed prohibition on federal cooperation with the Oklahoma County District Attorney

------

10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

[1]On August 17, 1998, we entered an order allowing Terry Lynn Nichols to intervene in this appeal. In companion appeal number 98-1246, Mr. Nichols challenges entry of the same order which is at issue in this matter.

and especially empaneled state grand jury in Oklahoma.  We exercise jurisdiction pursuant to 28 U.S.C. §1292(a)(1) and affirm on the merits.

## *Background*

On August 10, 1995, the federal grand jury in the Western District of Oklahoma indicted Timothy McVeigh and Terry Lynn Nichols on multiple charges stemming from the bombing of the Alfred P. Murrah office building in Oklahoma City on April 19, 1995.    *See United States v. McVeigh*   , No. 97-1287, 1998 WL 568351, at *1-2 (10th Cir. Sept. 8, 1998)(providing factual background).   On August 23, 1995, Judge Wayne Alley, then the presiding judge of the district court proceedings, entered an "Agreed Order" which addressed several pretrial matters.  That order stated, in pertinent part:

> Discovery materials may be disclosed only to the parties, their counsel and agents, except that such materials may be disclosed as necessary: (a) during court proceedings, including trial, hearings, or legal filings in this case; or (b) to potential witnesses, provided that such witnesses are made aware of and agree to honor the terms of this protective order.

ROA Vol. II, doc. 228, at 4.  Following the recusal of Judge Alley, and subsequent transfer of the proceedings to Chief Judge Matsch in Colorado, counsel for Mr. Nichols filed a motion seeking an       *in camera*  inquiry to determine whether individuals with access to discovery materials were violating the Agreed Order through inappropriate dissemination of information to the press.  The government joined in that motion.

On June 13, 1996, the district court entered an order entitled "Memorandum Opinion and Order Regarding Extrajudicial Statements by Attorneys and Support Personnel." That order covered a broad scope of issues. Its intent, however, was to "articulate the particular standards to be followed in this litigation . . . for future guidance in all forms of extrajudicial statements about [the] litigation." *United States v. McVeigh*, 931 F. Supp. 756, 760 (D. Colo. 1996). The order provided:

> A. None of the lawyers in this case or any persons associated with them, including any persons with supervisory authority over them, will release or authorize the release of information or opinion about this criminal proceeding which a reasonable person would expect to be disseminated by any means of public communication, if there is a reasonable likelihood that such disclosure will interfere with a fair trial of the pending charges or otherwise prejudice the due administration of justice.
> B. This duty to refrain from prejudicial disclosures requires all counsel to take reasonable precautions to prevent all persons who have been or are now participants in or associated with the investigations conducted by the prosecution and defense from making any statements or releasing any documents that are not in the public record and that are reasonably expected to be publicly disseminated which would be likely to materially prejudice the fairness of this criminal proceeding.

*Id.* In addition, the district court went on to prohibit any extrajudicial statements concerning "[t]he existence or contents of any statements given by the defendants to any law enforcement personnel" and "[t]he performance of any examinations or tests or any defendant's refusal or failure to submit to any examination, or test." *Id.*

-4-

Timothy McVeigh's trial concluded in June of 1997 with a guilty verdict on all counts. In September of 1997, prior to Mr. Nichols' trial, the government filed a motion to clarify whether the orders restricting extrajudicial statements likewise prohibited the prosecution's cooperation with the Oklahoma grand jury investigating the bombing. In a hearing held on September 8, 1997, the district court indicated the government could not disseminate materials to Oklahoma authorities. The court stated "I don't want to be interpreted as trying to obstruct a lawful grand jury in Oklahoma. On the other hand, my responsibility is to this trial and this case . . . .And [the Oklahoma state grand jury is] just going to have to wait . . . until the conclusion of these proceedings." ROA Vol. I, Tr. of 9/8/97, at 21-22.

Approximately three months later, after completion of Mr. Nichols' trial, the district court received a letter from the state trial judge conducting the grand jury proceedings in Oklahoma. In that letter, which was forwarded to all the parties, the judge made specific inquiry whether the two orders at issue here prevented federal assistance in the state proceedings. Using the letter as a catalyst, the government filed a formal motion requesting removal of any restrictions which would prohibit cooperation with state authorities. On June 24, 1998, the district court entered an order granting the government's request "insofar as this court's previous orders precluded the federal government's

cooperation with the Oklahoma County District Attorney and the especially empaneled state grand jury, except that the government shall not disclose any documents, papers, objects and information provided by the defendants through reciprocal discovery." ROA Vol. II, doc. 6149, at 3. On July 1, 1998, Mr. McVeigh filed his notice of appeal. We granted a stay of the order that same day.[2]

### Discussion

As a threshold matter, we must consider whether we have jurisdiction to consider this appeal. *See United States v. Dickstein*, 971 F.2d 446, 447 (10th Cir. 1992). Generally, we are limited to considering final orders which are accompanied by the entry of judgment. *See* 28 U.S.C. §1291. Here, however, we are in a curious procedural posture. The trial court's June 24 order was issued after entry of judgment in Mr. McVeigh's case. Indeed, his direct criminal appeal was at issue at the time the order was filed. Nevertheless, the order was interlocutory in nature. As a result, we must consider whether it is immediately appealable under any of the recognized exceptions to the final judgment rule. Because we conclude the order had the effect of modifying or dissolving a

---

[2]Mr. McVeigh originally filed an emergency motion for stay of the district court's order on June 25, 1998, in appeal number 97-1287. The court granted that motion. On June 30, the court dissolved that stay in light of Mr. McVeigh's failure to file a notice of appeal. This proceeding followed.

previously imposed injunction, we have jurisdiction under 28 U.S.C. §1292(a)(1).

Section 1292(a)(1) provides that courts of appeal shall have jurisdiction to hear matters arising from orders "granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. §1292(a)(1). If the order in question is clearly injunctive in nature, the statute provides a vehicle for immediate appeal without further inquiry. *See MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 981 (10th Cir. 1992). Where, as here, however, the order in question merely has the "practical effect" of an injunction, we apply a three part test to determine applicability of the statute. *See id.* at 982.

To invoke §1292(a)(1) jurisdiction here, the district court's order 1) must have the practical effect of granting or denying injunctive relief, 2) must be one which will result in serious or irreparable consequences if executed, and 3) must be a directive which can be challenged effectively only through immediate appeal. *See Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1351 (10th Cir. 1989); *United States v. Colorado*, 937 F.2d 505, 507-08 (10th Cir. 1991). Each prong must be satisfied in order for jurisdiction to attach. *State of Utah ex rel Utah State Dep't of Health v. Kennecott Corp*., 14 F.3d 1489, 1496-97 (10th Cir. 1994) (rejecting jurisdiction where appellant did not meet all three prongs).

The government maintains that because the underlying orders merely controlled the course of discovery they cannot be injunctive in nature. Discovery orders are generally not appropriate for interlocutory review. *See FTC v. Alaska Land Leasing, Inc.*, 778 F.2d 577, 578 (10th Cir. 1985). At the core of the June 16, 1996, order, however, was a prohibition on exchanging information. The order did not, as the government maintains, merely "regulate materials exchanged between the parties incident to the litigation." *United States v. Pappas*, 94 F.3d 795, 798 (2nd Cir. 1996). Rather, it prohibited federal agents from cooperating with state authorities in an ongoing criminal investigation. The trial court's June 24 order constituted a dissolution of the earlier prohibition. As such, it was injunctive in effect. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1426 (10th Cir. 1990)(finding jurisdiction where order at issue modified a prior protective order following conclusion of the trial court proceedings).

We likewise conclude appellants have satisfied the "serious consequences" prong of the jurisdictional test. Mr. McVeigh and Mr. Nichols maintain there is great risk in releasing information to the state authorities. The risk, they argue, is the likely adverse publicity, via dissemination to the public, which the release to the state authorities will bring. The argument follows that this adverse publicity, in turn, will seriously prejudice the defendants and cripple any ability to ensure a

fair trial if this court grants that relief. [3] For purposes of analyzing the jurisdictional question, these potential consequences are serious enough to warrant immediate review.

Finally, we turn to the third prong of the test. The precise inquiry here is not whether any review can be had, but rather, whether the order at issue can be challenged effectively only through immediate review. *See Carson v. American Brands*, 450 U.S. 79, 84-90 (1981) (discussing appropriateness of immediate review and parties' inability to effectively challenge order under consideration). If, as Mr. McVeigh suggests, the harm of dissemination cannot be remedied once the government has turned over all of the materials and potential witnesses, there can be no effective challenge in a subsequent proceeding. There is no question, given the procedural posture of this matter, that the more efficient and effective method of review rests in this court, at this time.

Moreover, we acknowledge this court's historical emphasis on avoiding piecemeal litigation. *See Boughton v. Cotter Corporation*, 10 F.3d 746, 748 (10th Cir. 1993)(noting "the burden on appellate courts imposed by fragmentary and piecemeal review of the district court's myriad rulings in the course of a typical case"). That goal is fostered if we, as an appellate court, are able to review all of

---

[3]The opinion in appeal number 97-1287*, United States v. McVeigh*, issued on September 8, 1998. This matter is not moot, however, because Mr. McVeigh has a petition for rehearing pending in that case.

the district court's rulings as a whole, rather than on a fragmented basis. The most efficient way to challenge the order at issue here is through immediate review. Doing so promotes judicial economy. Consequently, we hold this order is appropriate for review pursuant to §1292(a)(1). We now turn to the merits of this appeal.

We review the trial court's decision to modify this injunction under an abuse of discretion standard. *See Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 468 (10th Cir. 1992). Applying that standard, we will not disturb the district court's decision unless "' we have a definite and firm conviction'" that the order was entered in error or that the trial court "'exceeded the bounds of permissible choice'" in the circumstances presented. *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986)) . We have previously defined abuse of discretion as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) (quotations omitted). It is with this definition in mind that we review the district court's June 24 order.

The district court's decision to rescind the previous prohibition on releasing materials to state authorities came after both Mr. McVeigh and Mr. Nichols' trials were completed. Judgment has entered and both matters are on appeal to this

court. In maintaining the prohibition, the trial court ensured the fairness of the federal trials through to their conclusion. The court considered removing the prohibition only after considering the procedural posture of the case and the parties' briefs on the matter. The record reveals a very careful and deliberate examination of the issues involved.

Nevertheless, defendants maintain the potential for harm rests in the future inability to recapture this information once it is released. This argument necessarily hinges on a speculative, rather than concrete, potential for harm. Mr. McVeigh and Mr. Nichols maintain it is inevitable that leaks to the press will occur if there is federal cooperation with state authorities. They argue that this dissemination will extinguish any possibility of a fair trial if this court grants relief in either direct appeal. Mr. Nichols also maintains there is a risk that allowing federal agents to cooperate with state authorities will impugn the secrecy of the federal grand jury. Fed. R. Crim. P. 6(e)(2)(noting obligation of secrecy involved in grand jury proceedings)   . We find these arguments unpersuasive.

The Rules of Criminal Procedure contemplate cooperation between state and federal authorities. Rule 6(e)(3)(C)(iv) provides that "disclosure otherwise prohibited by [the grand jury rules] may . . . be made when permitted by a court at the request of an attorney for the government, upon a showing that such matters may disclose a violation of state criminal law, to an appropriate official of a state

or subdivision of a state for the purpose of enforcing such law." Fed. R. Crim. P. 6(e)(3)(C)(iv). Thus, not only did the district court make a careful decision, it was one which comports with the federal rules. Moreover, the June 24 order rightly evidences respect for the important notion of state sovereignty. *See Younger v. Harris*, 401 U.S. 37, 43 (1971)("Since the beginning of this country's history Congress has . . . manifested a desire to permit state courts to try state cases free from interference by federal courts.")[4]. At this procedural juncture, the federal courts should not be used as a vehicle to protect these defendants from lawful state authorities. Reversal of the district court's order would have that exact result.

In the event that either of these defendants receives a new trial, there are safeguards available to ensure the fairness of the federal proceedings. The trial court has many remedies available to protect the integrity of the jury process. These very defendants have already been privy to many of those options. The order of June 24 was limited in scope and did not apply to reciprocal discovery materials. Given that limitation, and the status of these proceedings, we hold the

---

[4]Defendants' assumption that the investigation materials will be released to the public is particularly speculative. All grand jury proceedings in Oklahoma are conducted in secrecy. Okla. Stat. tit. 22, §341. Moreover, both grand jurors and district attorneys are subject to criminal charges in the event of improper disclosure. *Id.* tit. 21, §583.

district court did not abuse its discretion in lifting the previous prohibition on cooperation with the state authorities.

The order of the district court is AFFIRMED. The stay entered on July 1, 1998, will dissolve on the date the mandate issues in this appeal. That mandate shall issue in the usual course pursuant to Federal Rule of Appellate Procedure 41(a).