**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN ZINK COMPANY, a corporation,

    Plaintiff-Appellee,

    v.

JOHN SMITH ZINK; ZEECO, INC.,

    Defendants-Appellants,

and

ZINKCO, INC., a corporation,

    Defendant.

No. 99-5233

---

**Appeal from United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 85-CV-292-K)**

---

Reuben Davis (Mary L. Lohrke with him on the brief), of Boone, Smith, Davis, Hurst & Dickman, Tulsa, Oklahoma, for the appellants.

Brett A. August (David C. Hilliard and Bradley L. Cohn with him on the brief), of Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, Illinois, for the appellee.

---

Before **HENRY**, **BRISCOE**, Circuit Judges, and **JENKINS**, District Judge.[*]

---

**BRISCOE**, Circuit Judge

---

Defendants John Smith Zink and Zeeco, Inc., appeal the district court's judgment holding them in civil contempt for violating a 1986 injunction, denying their motion to modify the injunction, and assessing attorney fees and costs against them. We affirm.

## I.

Plaintiff John Zink Company was founded in 1929 by John Steele Zink, the father of defendant John Smith Zink. Plaintiff registered its trademark JOHN ZINK on October 22, 1963, and until February 1972, the father and son were plaintiff's sole shareholders. On February 25, 1972, all of plaintiff's shares of stock were sold for $40,000,000. The sum of $11,000,000 was paid for the physical assets and $29,000,000 was paid "for the trade secrets, trade name, reputation and company potential." John Zink Co. v. Zinkco, Inc. , 1986 WL 15720 *1 (N.D. Okla. 1986). A certificate of renewal of the trademark was issued to plaintiff on October 22, 1983.

Around 1982, defendants "began use of ZINK, JOHN S. ZINK, JACK

---

[*] The Honorable Bruce S. Jenkins, Senior United States District Judge, District of Utah, sitting by designation.

2

ZINK and ZINKCO as trade names and marks with full knowledge of John Zink Company's wide use of ZINK and JOHN ZINK and its federally registered trademark." Id. at *4. In 1985, plaintiff filed an action to enjoin defendants from using these trade names. The district court found that Zinkco infringed upon the trade names and marks of the John Zink Company "in that the use of ZINKCO and ZINK by the defendants is likely to and actually has caused confusion or mistake as to the source or origin of the product within the relevant market area." Id. at *5. On December 18, 1986, the district court ordered that

> [t]o protect John Zink Company and the public from confusion the Court hereby enjoins the use of the names and marks ZINK, JACK ZINK, JOHN ZINK and ZINKCO from being the trade names and marks of defendant Zinkco, Inc. Further, defendant John S. Zink is enjoined from using the name ZINK, JACK ZINK, JOHN ZINK or JOHN S. "JACK" ZINK in any type of competitive sales endeavors in the business of gaseous fuel burners and liquid fuel burners and associated parts and component parts of such burners.

Aplt. App. I at 23 (hereinafter the "1986 injunction"). In 1987, defendants sought and received a clarification of the injunction.

On May 2, 1997, plaintiff filed an emergency motion for contempt, enforcement of judgment, expedited discovery, expedited hearing and monetary award. The memorandum in support of the motion alleged that John Smith Zink and Zeeco, Inc., the successor-in-interest to Zinkco, Inc., were "prominently using Mr. [John Smith] Zink's name in flagrant, contumacious and willful violation of the 1986 injunction." Id. at 30. After a three-day hearing on the

3

motion, a magistrate court recommended that (1) defendants be found in contempt for violating the 1986 injunction; (2) plaintiff be awarded attorney fees and costs; and (3) the injunction be modified to

> PERMANENTLY ENJOIN Zeeco, its successors, assigns and all those now or hereafter in privity, cooperation or participation with it, and John Smith Zink and his heirs, successors and assigns and all those now or hereafter in privity, cooperation or participation with him or his heirs, successors or assigns, from using the ZINK name or any permutation of initials, abbreviations, or nicknames referring to JOHN SMITH ZINK in any type of competitive sales endeavors in the business of gaseous fuel burners and liquid fuel burners and associated parts and component parts of such burners.

Aplt. App. III at 18-19. The district court conducted a de novo review of the case and adopted in part the report and recommendations. The court found that defendants were in civil contempt for violating the 1986 injunction and awarded plaintiff attorney fees and costs. However, the court denied defendants' motion to modify the injunction.

On appeal, defendants challenge the district court's determination that they were in contempt, its denial of their motion to modify the injunction, and the award of attorney fees to plaintiff.

## II.

**Contempt**

We review a finding of civil contempt under an abuse of discretion standard. <u>Reliance Ins. Co. v. Mast Constr. Co.</u>, 84 F.3d 372, 375 (10th Cir.

4

1996).  "In doing so, however, we review the district court's conclusions of law de novo and any findings of fact for clear error.  Abuse of discretion is established if the district court's adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact."    Id. at 375-76 (internal citation omitted).

Defendants argue that the district court erred in its civil contempt analysis by (1) looking beyond the four corners of the injunction in finding a violation; and (2) concluding   Madrigal Audio Laboratories, Inc. v. Cello, Ltd.,    799 F.2d 814 (2d Cir. 1986), does not control.

Defendants' first argument is a complete reversal from the position they asserted at the evidentiary hearing before the magistrate court.  At the hearing, in response to the magistrate's question as to whether the parties agreed it was appropriate to use the district court judge's May 13, 1987, statements to interpret the injunction, defendants' counsel replied:  "Absolutely, Your Honor.    *In fact, we would go further and say that it is essential that those be considered    *."  Aplt. App. II at 287 (emphasis added);    accord id. at 305 ("We believe that Judge Cook's statements are helpful to put his ruling in context.").  We conclude, in light of defendants' arguments below, that the invited error doctrine applies in this instance.  "The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was

5

error." United States v. Edward J. , 224 F.3d 1216, 1222 (10th Cir. 2000).

Defendants' second argument, raising Madrigal , was first asserted at the May 13, 1987, hearing on defendants' motion for clarification of the 1986 injunction. Defendants interpreted the injunction as "[leaving] for Mr. Zink the use of John S. Zink as a personal identifier in the business that he is in, which is competitive with the plaintiff." Aplt. App. I at 66. More specifically, they:

> understood the second paragraph to save unto him the right to use his name on documents, in making sales calls and that sort of thing, and also to be able to put out some types of publicity and that sort of thing where he could identify himself by his name, and since counsel for the plaintiff took the position, or we felt took the position that your use of the names did not permit that, we ask for clarification.

Aplt. App. I at 66-67. Defendants argued that Madrigal supported their position that John S. Zink had the right to utilize his personal name as a personal identifier.

> In [Madrigal ] the Court . . . carefully reasoned . . . "that even when a personal name has become a trade name it continues to serve the important function to its bearer [of] acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation or otherwise, with which he has been associated. Accordingly, though an individual may sell the right to use his personal name, [a court will] not bar him from using that name unless his intention to convey an exclusive right to the use of his own name is clearly shown." [799 F.2d at 822.]

Aplt. App. I at 67-68.

The court stated: "I of course have not read your case. I have not read it,

and I don't know what it says. And at this point I'm addressing what was intended at the time the order was entered." Id. at 74. In effect, the court found Madrigal irrelevant to the interpretation of the injunction because the court knew exactly what it intended.

> I gave some rather prolonged thought to it, and it was very carefully worded. The purpose was to permit Mr. Zink to continue to operate and to act as an individual using his proper name as he is known and has been known, but to prevent it from being linked to competitive sales endeavors in the particular business. . . . It was my purpose to permit Mr. Zink to sign a letter using his true name, but not to use the Zink name, as such, competing in this particular endeavor, in this particular commerce. . . . Now a name that has no confusion in regard to the John Zink Company and Mr. Zink signing his personal name as whatever position he holds, I see nothing wrong in that.

Id. at 71-72. As can be seen from this quote, the district court intended that the injunction prohibit defendants from using the name "John Smith Zink" in its publicity. This clearly informed defendants that their interpretation of the injunction was incorrect. The district court definitively resolved this issue in 1987. Nonetheless, plaintiffs argue "[t]here is nothing in law or in the injunction to prevent . . . Zeeco from letting the public know who owns it, or who its founder is, or that the son of the old John Zink Company founder is now behind it," Id. at 141-42, and again invoke Madrigal. This argument ignores the clarification provided by the district court *at defendants' request* in 1987, that the purpose of the injunction was to prevent John Smith Zink from publicly using his name in competition with the John Zink Company. This issue should have been

7

raised in an appeal from the 1987 proceeding and defendants are barred from raising the issue now. See W. Water Mgmt., Inc. v. Brown, 40 F.3d 105, 108 (5th Cir. 1994) ("[C]ollateral attack on an injunction during contempt proceedings is prohibited if earlier review of the injunction was available."); G. & C. Merriam Co. v. Webster Dictionary Co., Inc., 639 F.2d 29, 34 (1st Cir. 1980) ("Ordinarily the validity and terms of an injunction are not reviewable in contempt proceedings. They may be challenged only on appeal in the original proceeding and not by collateral attack.").

**Motion to modify injunction**

We review the district court's decision to modify an injunction under an abuse of discretion standard. United States v. McVeigh, 157 F.3d 809, 814 (10th Cir. 1998) (citing Prows v. Fed. Bureau of Prisons, 981 F.2d 466, 468 (10th Cir. 1992)). "[D]istrict courts retain power to modify injunctions in light of changed circumstances." Dombrowski v. Pfisner, 380 U.S. 479, 492 (1965). Although defendants asserted "changed circumstances" in their motion, they did not offer the district court even a scintilla of evidence that the circumstances surrounding the injunction might have changed. Rather, they conclusorily asserted they planned "on introducing testimony from actual consumers that will establish that [the use of Mr. Zink's name] will eliminate, rather than cause, confusion in the

marketplace." Aplt. App. III at 81. On appeal, defendants summarily assert that "almost thirty years have passed since the initial sale of the Zink trade name, and the nature of the consumer's understanding has changed in that time." Aplt. Br. at 22. With nothing more than these assertions from defendants, the district court did not abuse its discretion in denying the motion to modify the injunction. Cf. Bldg. & Constr. Trades Council of Philadelphia & Vicinity, AFL-CIO v. NLRB, 64 F.3d 880, 889 (3d Cir. 1995) ("[W]e are unwilling to hold, and BCTC cites no persuasive authority, that the mere passage of time and temporary compliance are themselves sufficient to constitute the type of changed circumstances that warrant lifting of an injunction, and certainly not an injunction under the circumstances of this case.").

**Attorney fees**

"We review a district court's decision on whether to award attorney fees for abuse of discretion, but we review de novo the district court's application of the legal principles underlying that decision." Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc., 223 F.3d 1143, 1146 (10th Cir. 2000).

Defendants concede there is no controlling Tenth Circuit authority on the issue of whether the contempt must be willful before an award of attorney fees is

9

appropriate.  Although the Third, Fifth, Sixth, Seventh, Ninth, Eleventh, and District of Columbia Circuits have held that a showing of willfulness is not required,  see Food Lion, Inc. v. United Food and Commercial Workers International Union, AFL-CIO-CLC  , 103 F.3d 1007, 1017 n.14 (D.C. Cir. 1997) (citing cases from the Fifth, Sixth, Seventh, and Ninth Circuits and so holding); Robin Woods, Inc. v. Robin F. Woods  , 28 F.3d 396, 400 (3d Cir. 1994);   Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.    , 793 F.2d 1529, 1535 (11th Cir. 1986), defendants ask this court to adopt the rule that willfulness is required.

In support of their request, defendants argue that    King v. Allied Vision Ltd., 65 F.3d 1051, 1063 (2d Cir. 1995), which held that "[i]n order to award fees, the district court had to find that [the defendant's] contempt was willful,"    is persuasive.  Upon review of the   King analysis, however, we conclude it is not persuasive .  One of the cases cited in   King for this proposition,   Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.   , 885 F.2d 1, 8 (2d Cir. 1989), held: "As to attorney's fees, courts in this Circuit    generally 'award the reasonable costs of prosecuting the contempt, including attorney's fees,' only where violation of a court order is found to have been willful."    The second case cited in   King, Vuitton et Fils S.A. v. Carousel Handbags   , 592 F.2d 126, 130 (2d Cir. 1979), held: "Since the plaintiff should be made whole for the harm he has suffered, it

10

is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful." Since <u>King</u>, the Second Circuit has withdrawn from awarding fees only where the contempt violation is willful. In <u>Weitzman v. Stein</u>, 98 F.3d 717, 719 (2d Cir. 1996), it restated the rule: "[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them."

The only other authority defendants cite in support of their request is <u>Omega World Travel, Inc. v. Omega Travel, Inc.</u>, 710 F. Supp. 169, 173 (E.D. Va. 1989), <u>aff'd</u>, 905 F.2d 1530 (4th Cir. 1990) (table). After recognizing the vast authority to the contrary and after a brief analysis, the court in <u>Omega</u> held that a showing of willfulness is required. We find <u>Omega</u> similarly unpersuasive. We agree with the district court and conclude that a finding of willfulness is not required to award attorney fees in a civil contempt proceeding.

AFFIRMED.